Docket No. 82047–Agenda 21–May 1997.

MILWAUKEE SAFEGUARD INSURANCE COMPANY
 et al.
, Appellees, v. STEPHEN F. SELCKE, Director of Insurance, 
et al.
, Appellants.

 Filed October 23, 1997

JUSTICE HEIPLE delivered the opinion of the court:

Defendants, the Director of Insurance and the Treasurer of the State of Illinois, contend that the circuit court erred in declaring unconstitutional section 409 of the Illinois Insurance Code (215 ILCS 5/409 (West 1992)), which imposes an annual privilege tax on foreign or alien insurance companies. For the reasons that follow, we affirm the circuit court's judgment.

FACTUAL AND PROCEDURAL HISTORY

Plaintiffs are insurance companies doing business in Illinois but incorporated in other states. As foreign companies, plaintiffs are required by section 409 of the Illinois Insurance Code (the Code) to pay a tax equal to 2% of their net premium income “for the privilege of doing business in this State.” 215 ILCS 5/409(1) (West 1992). Plaintiffs each paid the privilege tax under protest. See 30 ILCS 230/2a.1 (West 1992). They then brought numerous suits alleging that the privilege tax is facially unconstitutional under the uniformity clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IX, §2) and the equal protection clauses of the Illinois Constitution (Ill. Const. 1970, art. I, §2) and the United States Constitution (U.S. Const., amend. XIV). Plaintiffs sought a refund of payments they had made under the privilege tax.
(footnote: 1) The circuit court consolidated the suits.

Plaintiffs then successfully moved for partial summary judgment. In a memorandum decision, the circuit court declared that section 409 of the Code violates the uniformity clause of the Illinois Constitution (Ill. Const. 1970, art. IX, §2) because it exempts domestic insurance companies who meet certain qualifications from payment of the privilege tax, but requires foreign companies who meet those same qualifications to pay the tax. The court held that this requirement violates the uniformity clause because it is not rationally related to any real and substantial difference between foreign and domestic insurance companies. The court also ruled that section 409 violates the equal protection clauses of the Illinois Constitution (Ill. Const. 1970, art. I, §2) and the United States Constitution (U.S. Const., amend. XIV).

ANALYSIS

A trial court may render summary judgment if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2–1005(c) (West 1992)). In an appeal from a grant of summary judgment, we conduct a 
de novo
 review. 
Crum & Forster Managers Corp. v. Resolution Trust Corp.
, 156 Ill. 2d 384, 390 (1993).

Article IX, section 2, of the Illinois Constitution provides as follows:

“In any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly. Exemptions, deductions, credits, refunds and other allowances shall be reasonable.” Ill. Const. 1970, art. IX, §2.

To survive scrutiny under the uniformity clause, a nonproperty tax classification must (1) be based on a real and substantial difference between the people taxed and those not taxed, and (2) bear some reasonable relationship to the object of the legislation or to public policy. 
Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority
, 172 Ill. 2d 243, 250 (1996); 
Searle Pharmaceuticals, Inc. v. Department of Revenue
, 117 Ill. 2d 454, 468 (1987).

The party attacking a tax classification is not required to negate every conceivable basis which might support it. 
Searle
, 117 Ill. 2d at 468. Rather, upon a good-faith uniformity challenge, the taxing body bears the initial burden of producing a justification for the classifications. The party challenging the classification then has the burden of persuading the court that the justification offered is unsupported by the facts or insufficient as a matter of law. 
Allegro Services
, 172 Ill. 2d at 255; 
Geja's Cafe v. Metropolitan Pier & Exposition Authority
, 153 Ill. 2d 239, 248-49 (1992).

Section 409 of the Code provides in pertinent part:

“(1) Every foreign or alien company doing an insurance business in this State, except fraternal benefit societies, shall, for the privilege of doing business in this State *** pay to the Director of the State treasury a State tax equal to 2 per cent of the net taxable premium income ***. Every domestic insurance company, except a fraternal benefit society, which fails to comply with all the requirements of subsection (4) of this Section must pay to the Director for payment into the State Treasury a State tax equal to 2 per cent of the net taxable premium income ***.

* * *

(4) A domestic company must pay the State tax in subsection (1) of this Section unless:

(a) it maintains its principal place of business in this State; and

(b) it maintains in this State officers and personnel knowledgeable of and responsible for the company's operation, books, records, administration, and annual statement; and

(c) it conducts in this State substantially all of its underwriting, policy issuing, and serving operations relating to Illinois policyholders and certificate holders; and

(d) it complies with the provisions of Section 133(2) of this Code.”
(footnote: 2) 215 ILCS 5/409 (West 1992).

Section 2 of the Code defines a “domestic company” as a company incorporated or organized under the laws of Illinois, and a “foreign company” as a company incorporated or organized under the laws of any state of the United States other than Illinois. 215 ILCS 5/2(f), (g) (West 1992).

The circuit court held that section 409 violates the uniformity clause because it allows domestic companies to avoid payment of the privilege tax if they meet the requirements contained in paragraph (4), but does not allow foreign companies to avoid payment of the tax even if they meet those same requirements.

Defendants offer the following justification for allowing domestic but not foreign companies to avoid payment of the privilege tax. Defendants assert that regulation of foreign insurance companies presents greater regulatory and administrative burdens than regulation of domestic companies. Specifically, defendants note that the Illinois Department of Insurance has certain regulatory powers over domestic companies which it does not have over foreign companies. For example, the Department is authorized to conduct the liquidation of insolvent domestic, but not foreign, companies. See 215 ILCS 5/188 (West 1992). The Department also has power to issue corrective orders to financially troubled domestic companies with regard to such activities as underwriting, marketing, and use of company assets, but it does not have such power over foreign companies. See 215 ILCS 5/186.1 (West 1992). Furthermore, the department's revocation of a domestic company's certificate of authority requires that company to cease operating, while such a revocation against a foreign company merely prohibits the company from doing business in Illinois. See 215 ILCS 5/119 (West 1992). Defendants contend that these regulatory powers which the Department exercises over domestic companies are crucial to guaranteeing the solvency of insurers doing business in Illinois. Defendants assert that the Department's lack of such powers over foreign companies constitutes a real and substantial difference between foreign and domestic companies.

We agree with defendants' contention that the disparity in the Department's powers over foreign and domestic insurance companies constitutes a real and substantial difference between those who pay the privilege tax and those who do not. Foreign insurance companies stand in a different relationship to the Illinois regulatory regime than do domestic companies. Even if a foreign company were to comply with the requirements of section 409(4), it would not be identically situated to a complying domestic company because the department would nevertheless lack the aforementioned regulatory powers over the foreign company.

Having determined that the classification of foreign and domestic insurance companies found in section 409 is based on a real and substantial difference between those companies who pay the privilege tax and those who do not, we must next consider whether that classification bears a reasonable relationship to the object of the legislation or to public policy. 
Searle Pharmaceuticals
, 117 Ill. 2d at 468.

Although defendants assert that foreign insurance companies pose greater regulatory burdens than domestic companies, we note that, in addition to the privilege tax, foreign companies are required to pay all expenses incurred by the Illinois Department of Insurance in examining those companies, including lodging and travel expenses. See 215 ILCS 5/132.4(d), 408(3) (West 1992). The privilege tax is therefore obviously not intended to compensate the state for any additional expenses associated with regulating foreign insurance companies, since those companies are already required to pay such expenses.

Defendants contend, however, that taxing foreign insurance companies for the privilege of doing business in Illinois encourages those companies to incorporate in Illinois, either directly or through a subsidiary. This in turn advances the interests of Illinois policyholders, defendants argue, because the Department of Insurance possesses greater regulatory authority over Illinois companies. Defendants thus assert that imposing the privilege tax on foreign companies as an inducement to incorporate in Illinois bears a reasonable relationship to the legislative objective of enhancing the security of Illinois policyholders.

Before evaluating the merits of this argument, we first note the unique nature of the constitutional provision at issue in this case. Article IX, section 2, of the Illinois Constitution of 1970 was intended to serve as a specific limitation on the taxing power of the Illinois General Assembly. 
Searle
, 117 Ill. 2d at 466-67. The provision “was not made to duplicate the limitation on the taxing power contained in the equal protection clause.” 
Searle
, 117 Ill. 2d at 467. Rather, the uniformity clause was meant to insure that “taxpayers *** receive added protection in the state constitution” based on “standards of reasonableness which are more rigorous than those developed under the federal constitution.” 7 Record of Proceedings, Sixth Illinois Constitutional Convention 2062, 2074 (Report of the Committee on Revenue and Finance, 
Section 1–State Revenue Power
).

Applying these more rigorous standards of reasonableness, we conclude that imposing the privilege tax on all foreign insurance companies does not bear a reasonable relationship to the object of the legislation or to public policy. As noted above, the privilege tax is not necessary to compensate the state for the additional costs of regulating foreign companies, since those companies are already required to pay such additional costs. Furthermore, while the Department of Insurance lacks certain regulatory powers over foreign companies which it enjoys over domestic companies, simply collecting a privilege tax from foreign companies does not bestow such powers on the Department. Foreign companies pose the same regulatory obstacles to the Department with or without the tax.

Although defendants assert that the privilege tax promotes the interests of Illinois policyholders by inducing foreign companies to incorporate in Illinois, we believe that such an approach to achieving regulatory control imposes an unreasonable burden upon foreign insurance companies under the uniformity clause. Foreign companies which meet all of the recordkeeping and business requirements of section 409(4), and which pay all expenses of their regulation by the Department of Insurance, must nevertheless pay the privilege tax. Assessing the tax does not bear a reasonable relationship to protecting the interests of Illinois policyholders because the tax is imposed on all foreign companies regardless of their financial strength or their level of compliance with the requirements of section 409(4). Furthermore, if the domestic regulatory powers lauded by defendants are as effective as asserted, an irresponsible foreign company has a strong incentive to escape such Illinois regulation indefinitely by merely continuing to pay the privilege tax and remaining incorporated outside of Illinois. In light of the rigorous standards mandated by the uniformity clause, we believe that imposing the privilege tax on foreign companies solely because they are not incorporated in Illinois is not a permissible use of the General Assembly's taxing power.

Defendants also contend that there are genuine issues of material fact in this case which preclude the entry of summary judgment. Specifically, defendants dispute the allegation contained in plaintiffs' motion for summary judgment that all foreign insurance companies are required to pay the privilege tax. Defendants point out that many foreign companies have formed Illinois subsidiaries which qualify for the tax exemption afforded to domestic companies.

We do not believe that this issue constitutes a factual dispute precluding summary judgment. As the circuit court noted, Illinois subsidiaries are entitled to exemption from the tax because they are legally independent entities incorporated under the laws of Illinois. Companies incorporated under the laws of states other than Illinois, such as plaintiffs, must still pay the tax if they themselves wish to conduct business in Illinois. Thus, no genuine fact issue exists on this point.

Defendants also contend that the circuit court erred in failing to consider their own motion for summary judgment. The court's granting of plaintiffs' summary judgment motion, however, obviated the need to rule on defendant's motion. Furthermore, as defendants themselves acknowledge, the circuit court considered defendants' arguments in the course of ruling on plaintiffs' motion.

Finally, defendants contend that plaintiffs lack standing to challenge the privilege tax because plaintiffs have not demonstrated that they meet the qualifications outlined in section 409(4) allowing domestic companies to avoid payment of the tax. This contention mistakenly assumes that plaintiffs' objection to the privilege tax depends on the exemption granted to domestic companies in section 409(4). Plaintiffs' argument, however, is simply that the privilege tax is facially unconstitutional because it is imposed on all foreign insurance companies based solely on their state of incorporation. This facial challenge applies regardless of the operation of section 409(4). The fact that certain domestic companies are allowed to avoid payment of the tax under section 409(4) merely serves to illustrate the absence of a reasonable relationship between the taxing classification and the object of the legislation. See 
Searle
, 117 Ill. 2d at 468.

For the reasons stated, we hold that section 409 of the Illinois Insurance Code (215 ILCS 5/409 (West 1992)) violates article IX, section 2, of the Illinois Constitution of 1970. Because of this holding, it is unnecessary for us to address the circuit court's ruling that section 409 also violates the equal protection clauses of the Illinois and United States Constitutions.

The cause is remanded to the circuit court for further proceedings consistent with this opinion.

Affirmed and remanded
.

JUSTICE BILANDIC, dissenting:

I disagree with the majority's conclusion that section 409 of the Illinois Insurance Code (215 ILCS 5/409 (West 1992)) facially violates the uniformity clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IX, §2). I therefore dissent.

Section 409 imposes a 2% tax on net taxable premium income collected on insurance policies written in Illinois. Domestic insurance companies, however, are not required to pay the premium tax if they meet certain exemption requirements, such as maintaining in Illinois their principal place of business; maintaining in Illinois officers and personnel knowledgeable of and responsible for the company's operation, books, records, and administration; conducting in Illinois substantially all underwriting, policy issuing, and serving operations relating to Illinois policyholders; and keeping in Illinois suitable copies of the corporate books, records, documents, accounts, and vouchers. 215 ILCS 5/409, 133(2) (West 1992). Accordingly, under this statutory scheme, all foreign insurance companies are liable for the premium tax, whereas domestic insurance companies are also liable for the tax, unless they meet the extensive exemption requirements.

Plaintiffs, a group of foreign insurance companies, challenge this statutory scheme as unconstitutional on its face under both the uniformity clause of the Illinois Constitution and the equal protection clauses of the Illinois and United States Constitutions. I would hold that section 409 withstands their constitutional challenges.

I. Uniformity Clause

As the majority correctly notes, to survive scrutiny under the uniformity clause, a nonproperty tax classification must (1) be based on a real and substantial difference between the people taxed and those not taxed, and (2) bear some reasonable relationship to the object of the legislation or to public policy. The circuit court concluded that section 409 on its face violates the uniformity clause because it fails to satisfy the first prong of this test. The circuit court determined that there is no real and substantial difference between foreign and domestic insurance companies that fulfill the exemption criteria. The majority disagrees with this finding and concludes that the first prong of this test is satisfied. After giving a few concrete examples of Illinois' regulatory power disparity over foreign and domestic insurance companies, the majority rightly concludes that the premium tax classification, which distinguishes between foreign and domestic insurance companies, is based on this real and substantial difference between them. As the majority opinion explains: “Foreign insurance companies stand in a different relationship to the Illinois regulatory regime than do domestic companies. Even if a foreign company were to comply with the requirements of section 409(4), it would not be identically situated to a complying domestic company because the Department would nevertheless lack the aforementioned regulatory powers over the foreign company.” Slip op. at 5. I agree with the majority's conclusion as to the first prong of the test.

Where I depart from the majority is with its conclusion regarding the second prong. Under it, the premium tax classification must be upheld if it bears some reasonable relationship to the object of the legislation or to public policy. A proper application of this court's precedents demonstrates that this prong is also satisfied. 

The scope of a court's inquiry under the uniformity clause remains relatively narrow. 
Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority
, 172 Ill. 2d 243, 250 (1996). As this court has explained: 

“Statutes bear a presumption of constitutionality, and broad latitude is afforded to legislative classifications for taxing purposes. [Citation.] 
One challenging a nonproperty tax classification has the burden of showing that it is arbitrary or unreasonable, and if a state of facts can reasonably be conceived that would sustain the classification, it must be upheld.
” (Emphasis added.) 
Allegro Services, Ltd.
, 172 Ill. 2d at 250-51.

The following procedural process is used to determine whether a statute violates the uniformity clause. Upon a good-faith uniformity challenge, a taxing body bears the initial burden of producing a justification for its nonproperty tax classification. Once done, the plaintiff bears the burden of persuading the court that the justification is not supported by facts or is insufficient as a matter of law. The plaintiff who fails to meet its burden of persuasion loses, and the tax classification will be upheld. 
Geja's Cafe v. Metropolitan Pier & Exposition Authority
, 153 Ill. 2d 239, 248-49 (1992).

In the present case, defendants have met their burden of producing a justification for the premium tax classification. They assert that the classification was drawn by the General Assembly in an effort to increase the efficiency and effectiveness of Illinois' regulation of the insurance industry, which is necessary to protect Illinois policyholders from insurer insolvency. Section 409 aids this purpose by offering tax incentives to companies for such things as locating their books, records, and personnel in Illinois, which in turn makes those companies easier to regulate. The tax incentives are also offered to encourage companies to make Illinois their corporate domicile, which then subjects those companies to greater Illinois regulatory control. When the exemption requirements are complied with, Illinois policyholders win greater protection from insurer insolvency because Illinois regulatory authorities are then enabled to identify insurer insolvency problems well in advance of a crisis, and are also empowered to take the actions necessary to protect policyholders. In addition, defendants described in detail the difficulties that Illinois regulators have had in the past monitoring foreign insurance companies. Offering tax incentives was thought by the General Assembly to be a constructive way in which to address this serious problem. 

The foregoing regulatory justification having been produced, plaintiffs bear the heavy burden of persuading the court that this asserted justification is not supported by facts or is insufficient as a matter of law. 
Geja's Cafe
, 153 Ill. 2d at 248-49. Plaintiffs here do not even attempt to show that defendants' regulatory justification is not supported by the facts. They argue only that this justification is insufficient as a matter of law. Plaintiffs fail in their attempt to make this showing. 

After noting that the uniformity clause provides similar but even greater protection than that provided by the federal equal protection clause, plaintiffs rely heavily upon the United States Supreme Court case of 
Metropolitan Life Insurance Co. v. Ward
, 470 U.S. 869, 84 L. Ed. 2d 751, 105 S. Ct. 1676 (1985), a federal equal protection clause case, in their attempt to show that section 409 violates the uniformity clause as a matter of law. Plaintiffs submit that 
Ward 
controls this case because there the Court “rejected precisely the same justification that defendants have offered here in support” of the premium tax classification. They maintain that 
Ward
 renders section 409 unconstitutional on its face, because it leaves no possible room for upholding that section. Plaintiffs' argument must be rejected, for the reasons explained below.

Proper understanding of 
Ward
 requires a brief description of the landmark case which preceded it, 
Western & Southern Life Insurance Co. v. State Board of Equalization
, 451 U.S. 648, 68 L. Ed. 2d 514, 101 S. Ct. 2070 (1981). In 
Western & Southern
, a foreign insurance company challenged as violative of the federal equal protection clause a California statute which imposed a retaliatory tax on foreign insurers whose home states imposed a discriminatory tax on California insurers doing business within their borders.
(footnote: 3) The Court explicitly held, for the first time, that a state may not impose “more onerous taxes or other burdens on foreign corporations than those imposed on domestic corporations, unless the discrimination between foreign and domestic corporations bears a rational relation to a legitimate state purpose.” 
Western & Southern
, 451 U.S. at 668, 68 L. Ed. 2d at 530, 101 S. Ct. at 2083. In other words, the Court established that a tax classification based on corporate domicile will be sustained if it is found to be “rationally related to achievement of a legitimate state purpose.” 
Western & Southern
, 451 U.S. at 657, 68 L. Ed. 2d at 523, 101 S. Ct. at 2077. The Court promulgated a two-part inquiry to be used in making this determination: “(1) Does the challenged legislation have a legitimate purpose? and (2) Was it reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose?” 
Western & Southern
, 451 U.S. at 668, 68 L. Ed. 2d at 531, 101 S. Ct. at 2083. Ultimately, the Court sustained California's retaliatory tax classification. The Court held that California's purpose in enacting the tax–to promote the interstate business of its domestic insurers by deterring other states from enacting discriminatory or excessive taxes against them–was legitimate, and that California lawmakers reasonably could have believed that imposing the retaliatory tax would promote this purpose. 
Western & Southern
, 451 U.S. at 668-74, 68 L. Ed. 2d at 531-35, 101 S. Ct. at 2083-86. 

A short time later, in 
Ward
, 470 U.S. 869, 84 L. Ed. 2d 751, 105 S. Ct. 1676, the Court reaffirmed the principles established in 
Western & Southern
, while clarifying their application. There, a group of foreign insurance companies brought a federal equal protection challenge against an Alabama statute that imposed a higher gross premiums tax on foreign insurance companies than on domestic insurance companies. The Alabama trial court sustained the tax classification as rationally related to the state purposes of (1) encouraging the formation of new insurance companies in Alabama, and (2) encouraging capital investments in certain Alabama assets by foreign insurance companies. A state appellate court agreed, but found that there were unresolved factual issues as to whether the statutory classification was rationally related to these purposes. To avoid delay, the plaintiffs stipulated that a rational relationship was present and sought review as to the legitimacy of the two purposes relied upon by the Alabama court. The Supreme Court determined that, given the procedural posture of the case, the only question properly before it was whether the two purposes approved by the Alabama courts were legitimate. 
Ward
, 470 U.S. at 875 & n.5, 84 L. Ed. 2d at 757-58 & n.5, 105 S. Ct. at 1680 & n.5.

The Court concluded that neither purpose was legitimate under the circumstances of that case. 
Ward
, 470 U.S. at 882-83, 84 L. Ed. 2d at 762, 105 S. Ct. at 1684. The Court held that the promotion of domestic industry was not a legitimate state purpose for imposing the tax because such an aim “is purely and completely discriminatory, designed only to favor domestic industry within the State, no matter what the cost to foreign corporations also seeking to do business there.” 
Ward
, 470 U.S. at 878, 84 L. Ed. 2d at 759, 105 S. Ct. at 1681. As to the second purpose, to encourage capital investments in certain Alabama assets, the Court determined that this purpose was also illegitimate because domestic insurers remained entitled to a more favorable rate of taxation regardless of whether they invested in Alabama assets or not, while foreign insurers could never completely eliminate the tax regardless of how much they invested. The Court found this disparity to demonstrate that the statute's classification was impermissibly “based solely on residence.” 
Ward
, 470 U.S. at 882-83, 84 L. Ed. 2d at 762, 105 S. Ct. at 1684. The Court emphasized that its holdings meant only that states may not impose discriminatorily higher taxes on nonresident corporations “solely because they are nonresidents.” 
Ward
, 470 U.S. at 882 n.10, 84 L. Ed. 2d at 762 n.10, 105 S. Ct. at 1684 n.10. Significantly, although the Court found the two purposes before it to be illegitimate, the Court remanded the cause to the Alabama courts for consideration of other purposes that might sustain the premium tax classification. 
Ward
, 470 U.S. at 875 n.5, 84 L. Ed. 2d at 758 n.5, 105 S. Ct. at 1680 n.5. The Court explained that where a legitimate state purpose is found, then “the state law stands as long as the burden it imposes is found to be rationally related to that purpose, a relationship that is not difficult to establish.” 
Ward
, 470 U.S. at 881, 84 L. Ed. 2d at 761, 105 S. Ct. at 1683. 

The dissent in 
Ward
 claimed that the tax classification at issue should be sustained on other bases, including that it addresses the legitimate state concern that foreign insurers are more difficult to regulate so as to safeguard their solvency than are domestic insurers. 
Ward
, 470 U.S. at 888, 891-93, 84 L. Ed. 2d at 766, 768-69, 105 S. Ct. at 1687, 1688-89 (O'Connor, J., dissenting, joined by Brennan, Marshall, and Rehnquist, JJ.). In response, the Court majority emphasized that this case “does not involve or question, as the dissent suggests [citation], the broad authority of a State to promote and regulate its own economy.” 
Ward
, 470 U.S. at 882 n.10, 84 L. Ed. 2d at 762 n.10, 105 S. Ct. at 1684 n.10. The Court majority thus plainly explained that it did not consider the legitimacy of any other purpose to be before it, particularly those addressed by the dissent.

As noted above, plaintiffs contend that 
Ward 
controls this case because there the Court “rejected precisely the same justification that defendants have offered here in support” of the premium tax classification. This argument misrepresents 
Ward
's holdings. Most fundamentally, the 
Ward
 majority did not address the legitimacy of the purpose being advanced here for sustaining the tax classification: 
i.e.
, to promote effective state regulation of the insurance industry in order to protect the state's policyholders from insurer insolvency. Although in 
Ward
 the State of Alabama did argue a similar purpose to the Supreme Court, and in the process persuaded four dissenting justices that its tax statute could be upheld on this ground without further proceedings, this purpose clearly was not ruled upon by the Court majority. The majority left for consideration on remand the legitimacy of all purposes other than the two it found to be properly before it. Therefore, despite plaintiffs' vehement protestations to the contrary, 
Ward
 does not resolve this case.

This court must look beyond 
Ward
 to determine whether Illinois' premium tax statute violates the equal protection clause, or the Illinois uniformity clause, on its face. The Supreme Court's holdings in 
Ward
 were subsequently elaborated on in 
Northeast Bancorp, Inc. v. Board of Governors of the Federal Reserve System
, 472 U.S. 159, 86 L. Ed. 2d 112, 105 S. Ct. 2545 (1985). There, the states of Massachusetts and Connecticut permitted acquisition of local banks by out-of-state bank holding companies, but only if those companies were headquartered in New England and not controlled by companies headquartered in other states. Federal law authorized such limitations and applied them to national banks located in those states. Companies headquartered outside New England challenged the state laws as violative of, 
inter alia
, the federal equal protection clause, but the Supreme Court sustained them.

In distinguishing 
Ward
, the Court quoted its statement that the equal protection clause prohibited state economic regulation only if “ `accomplished by imposing discriminatorily higher taxes on nonresident corporations 
solely
 because they are nonresidents.' ” (Emphasis added.) 
Northeast Bancorp, Inc.
, 472 U.S. at 177, 86 L. Ed. 2d at 127, 105 S. Ct. at 2555, quoting 
Ward
, 470 U.S. at 882 n.10, 84 L. Ed. 2d at 762 n.10, 105 S. Ct. at 1684 n.10. The Court explained that 
Ward
 determined that “encouraging the formation of new domestic insurance companies within a State and encouraging capital investment in the State's assets and governmental securities were not, 
standing alone
, legitimate state purposes which could permissibly be furthered by discriminating against out-of-state corporations in favor of local corporations.” (Emphasis added.) 
Northeast Bancorp, Inc.
, 472 U.S. at 177, 86 L. Ed. 2d at 127, 105 S. Ct. at 2555. Returning to the case before it, the Court then pointed to traditional state interests in local control of banking to “preserve a close relationship between those in the community who need credit and those who provide credit.” 
Northeast Bancorp, Inc.
, 472 U.S. at 178, 86 L. Ed. 2d at 127, 105 S. Ct. at 2555. Allowing interstate banking only on a regional basis preserved such relationships to some extent while obtaining the benefits of increasing the number of banking competitors. Allowing immediate acquisition of local banks by companies headquartered outside New England would threaten the independence of local banking institutions. The Court explained that these purposes were different from the purposes rejected in 
Ward
. 
Northeast Bancorp, Inc.
, 472 U.S. at 178, 86 L. Ed. 2d at 127-28, 105 S. Ct. at 2555. 
Northeast Bancorp
 thus makes clear that a state may discriminate against nonresident corporations so long as it does not do so solely because they are nonresidents. Consequently, if the discrimination between foreign and domestic companies bears a rational relationship to 
any
 legitimate state purpose, then it is permissible under the equal protection clause.

More recently, the Supreme Court of Florida in 
Gallagher v. Motors Insurance Corp.
, 605 So. 2d 62 (Fla. 1992), 
cert. dismissed
, 506 U.S. 1074, 122 L. Ed. 2d 179, 113 S. Ct. 1036 (1993), upheld as constitutional under the federal equal protection clause a state insurance premium tax statute similar to the statute challenged here. Like the statutory scheme here at issue, under the Florida statute, foreign insurance companies were taxed at a higher rate than domestic companies and, regardless of the actions taken by a foreign company, it could never reduce the tax to the level paid by domestic companies. The Supreme Court of Florida, applying the test set forth in 
Western & Southern
 and elaborated on in 
Ward
 and 
Northeast Bancorp
, Inc.
, determined that Florida's asserted purpose for enacting its premium tax–Florida's desire to gain greater regulatory control over foreign insurance companies–was legitimate, and that Florida's legislature reasonably could have believed that imposing the premium tax on foreign insurers would promote this objective. 
Gallagher
, 605 So. 2d at 66-70. The court therefore upheld Florida's premium tax statute even though it discriminated against nonresident corporations because it did not do so solely because they are nonresidents. Florida's discrimination as between the foreign and domestic insurance companies bore a rational relationship to the legitimate state purpose of gaining greater regulatory control over insurance companies.

Because the Florida and Illinois statutes are so similar, and because Florida officials were asserting a regulatory justification for their statute virtually identical to that posed here by Illinois officials, I find the 
Gallagher
 analysis to be instructive. Like the court in 
Gallagher
, I would hold that Illinois' objective of gaining greater regulatory control over foreign insurers in order to protect Illinois policyholders from insurer insolvency is a legitimate state purpose for Illinois' premium tax classification. Similarly, I would also hold that the Illinois General Assembly, like the Florida legislature, reasonably could have believed that imposing the premium tax on foreign insurers would promote Illinois' objective of gaining greater regulatory control over foreign insurers in order to protect Illinois policyholders from insurer insolvency. I would therefore conclude that no equal protection violation has been established by plaintiffs.

As noted above, plaintiffs rely on 
Ward
 in their attempt to establish a uniformity clause violation. Plaintiffs' erroneous assertion that 
Ward
 controls this case does not satisfy their heavy burden of persuasion in this regard.

Besides 
Ward
, plaintiffs cite six other cases in their attempt to show that defendants' regulatory justification is insufficient as a matter of law, thereby establishing a uniformity clause violation. None of these cases, however, supports plaintiffs' claim that Illinois' premium tax classification lacks a reasonable relationship to the asserted regulatory justification as a matter of law.

Searle Pharmaceuticals, Inc. v. Department of Revenue
, 117 Ill. 2d 454 (1987), 
Commercial National Bank v. City of Chicago
, 89 Ill. 2d 45, 72-73 (1982), and 
Winter v. Barrett
, 352 Ill. 441, 461-63 (1933), are all inapposite to the case at bar because in those cases this court concluded that there was no real and substantial difference between the two classes of taxpayers being subjected to different tax rates. Here, in contrast, the majority and I agree that the premium tax classification is based upon the real and substantial difference between foreign and domestic insurance companies of Illinois' disparate regulatory powers over them.

The last three cases cited by plaintiffs did not even consider the issue of whether any difference between foreign and domestic insurance companies could justify differences in taxation. 
National-Ben Franklin Fire Insurance Co. v. Brenza
, 411 Ill. 337 (1952); 
People v. Concordia Fire Insurance Co
., 350 Ill. 365 (1932), 
modified
, 292 U.S. 535, 78 L. Ed. 1411, 54 S. Ct. 830 (1934); 
Hanover Fire Insurance Co. v. Harding
, 327 Ill. 590 (1927), 
on remand from
 272 U.S. 494, 71 L. Ed. 372, 47 S. Ct. 179 (1926), 
rev'g
 317 Ill. 366 (1925). This is not surprising given that these cases were all grounded upon 
Hanover Fire Insurance Co. v. Harding
, 272 U.S. 494, 71 L. Ed. 372, 47 S. Ct. 179 (1926), a decision handed down decades before the Court in 
Western & Southern
 clarified the proper test to be used in deciding equal protection challenges based on corporate domicile. See 
Western & Southern
, 451 U.S. at 657-68, 68 L. Ed. 2d at 523-30, 101 S. Ct. at 2077-78 (discussing development of law). These cases are thus not dispositive of the present case.

In light of plaintiffs' failure to establish that defendants' regulatory justification is insufficient as a matter of law, the majority seriously errs in striking its deathblow to Illinois' premium tax statute. I would conclude that the premium tax statute survives plaintiffs' uniformity clause challenge. The majority, however, concludes otherwise and gives four reasons for its determination that the premium tax classification does not bear a reasonable relationship to Illinois' regulatory efforts, as a matter of law. The majority's rationale does not withstand scrutiny.

The majority first states that the premium tax classification lacks a reasonable relationship to Illinois' regulatory efforts because foreign insurance companies are already required to pay all expenses incurred by the Department in examining those companies (see 215 ILCS 5/132.4(d), 402, 408.3 (West 1992)). The majority neglects to mention that all insurance companies, not just foreign ones, are required to pay the Department's regulatory expenses. Regardless, I fail to see how requiring insurance companies to pay certain regulatory expenses operates to make the premium tax classification unconstitutional under the uniformity clause. Neither plaintiffs nor the majority opinion cite any authority for this unique proposition. I reject it as unsound. The constitutionality of a tax classification cannot be made to depend on what other statutory provisions require. This is because a legislative body, in drawing classifications, is entitled to adopt laws that “only partially ameliorate a perceived evil” (
City of New Orleans v. Dukes
, 427 U.S. 297, 303, 49 L. Ed. 2d 511, 517, 96 S. Ct. 2513, 2517 (1976)). Here, our General Assembly reasonably could have believed that the Insurance Code provision imposing the premium tax and those provisions imposing payment of regulatory expenses each partially work to aid Illinois in its efforts to regulate insurance companies. This exercise of legislative judgment does not offend the uniformity clause of the Illinois Constitution.

The majority next determines that the premium tax classification lacks a reasonable relationship to Illinois' regulatory efforts because “simply collecting” the tax from foreign companies does not act to bestow the desired regulatory powers upon the Department. This court, however, has never suggested that the asserted justification for the legislature's statutory classification must be proven to in fact promote the legislative objective in order to satisfy the uniformity clause. To the contrary, our opinions have consistently held that all the uniformity clause requires is that the nonproperty tax classification bear “a reasonable relationship” to the legislative objective or to public policy. See, 
e.g.
, 
Searle Pharmaceuticals, Inc. v. Department of Revenue
, 117 Ill. 2d 454, 468 (1987). This test has been met here. The General Assembly reasonably could have believed that providing a tax incentive to encourage foreign insurance companies to make Illinois their corporate domicile would promote Illinois' objective of gaining greater regulatory control over those insurers, thereby providing greater protection to Illinois policyholders from insurer insolvency. This court should not act to replace the General Assembly's judgment in this matter with its own. The majority's approach disregards the well-settled principle that courts must defer to legislative judgment in drawing a classification if any “state of facts can reasonably be conceived that would sustain the classification.” 
Allegro Services, Ltd.
, 172 Ill. 2d at 251.

Thirdly, the majority objects to the premium tax classification as unreasonable because “[f]oreign companies which meet all of the recordkeeping and business requirements of section 409(4) *** must nevertheless pay the *** tax.” Slip op. at 6. In doing so, the majority again fails to apply the dispositive test. The premium tax classification, which is based on the real and substantial difference between the regulatory powers Illinois has over foreign and domestic insurance companies, must here be sustained so long as it bears some reasonable relationship to the legislative purpose of increasing Illinois' regulatory control over the insurance industry. As discussed above, the classification meets this requirement. It is therefore irrelevant that foreign companies which meet all of the other exemption requirements are nonetheless required to pay the tax.

Finally, the majority asserts that assessing the premium tax on foreign insurance companies is not reasonably related to protecting the interests of Illinois policyholders because “the tax is imposed on all foreign companies regardless of their financial strength or their level of compliance with the requirements of section 409(4)” (slip op. at 7) and, furthermore, “an irresponsible foreign company has a strong incentive to escape such Illinois regulation indefinitely by merely continuing to pay the privilege tax and remaining incorporated outside of Illinois” (slip op. at 7). Once again, the majority's rationale cannot be made to comport with prior precedent of this court. In 
Geja's Cafe
 
v. Metropolitan Pier & Exposition Authority
, 153 Ill. 2d 239 (1992), a tax was imposed on food and beverage sales in restaurants located in certain geographical areas of the City of Chicago in order to fund expansion of a city convention center. The plaintiff restaurants and patrons challenged the geographical tax classifications as being drawn “either too small or too big,” for various reasons. 
Geja's Cafe
, 153 Ill. 2d at 249. This court rejected the plaintiffs' challenge, stating:

“Plaintiffs' arguments boil down to mere assertions that they can draw better taxing lines than the General Assembly. However, in a uniformity clause challenge the court is not required to have proof of perfect rationality as to each and every taxpayer. The uniformity clause was not designed as a straightjacket for the General Assembly. Rather, the uniformity clause was designed to enforce minimum standards of reasonableness and fairness as between groups of taxpayers.” 
Geja's Cafe
, 153 Ill. 2d at 252.

Like the plaintiffs in 
Geja's Cafe
, the majority here objects to the taxing classification drawn by the General Assembly by arguing that the classification does not always make sense if one considers the circumstances of a particular foreign company (“the tax is imposed on all foreign companies regardless of their financial strength or their level of compliance with the requirements of section 409(4)” and “an irresponsible foreign company” can nonetheless escape the desired regulation by choosing to pay the tax). This court should reject such reasoning, as we did in 
Geja's Cafe
. As we stated there, a court “is not required to have proof of perfect rationality as to each and every taxpayer” in order to sustain a tax as constitutional under the uniformity clause. 
Geja's Cafe
, 153 Ill. 2d at 252. This court should therefore adhere to our prior decision in 
Geja's Cafe
, which recognized that in conducting uniformity clause review this court is limited to determining whether the classification actually drawn by the legislature meets the uniformity clause's standard of reasonableness and fairness as between groups of taxpayers. 

In conclusion, plaintiffs have failed to establish that defendants' asserted regulatory justification for the premium tax classification is insufficient as a matter of law. Therefore, plaintiffs have failed to meet their burden of persuasion and, as a result, the classification should be upheld by this court as withstanding their uniformity clause challenge.

II. Equal Protection Clauses

This court has determined that if a tax is constitutional under the uniformity clause, then it “ `inherently fulfills the requirements of the equal protection clause.' ” 
Allegro Services, Ltd.
, 172 Ill. 2d at 250, quoting 
Geja's Cafe
, 153 Ill. 2d at 247. Accordingly, having found the premium tax to withstand plaintiffs' uniformity clause challenge, I would also find it to withstand plaintiffs' challenge under the Illinois and United States equal protection clauses.

III. Conclusion

Plaintiffs have failed to establish that the premium tax classification violates either the uniformity clause of the Illinois Constitution or the equal protection clauses of the United States and Illinois Constitutions. Therefore, the summary judgment granted to plaintiffs should be reversed.

CHIEF JUSTICE FREEMAN and JUSTICE McMORROW join in this dissent.

FOOTNOTES
1:
Plaintiffs also sought a declaration that if the privilege tax were declared unconstitutional, they would not be required to pay any additional retaliatory tax under section 444 of the Insurance Code (215 ILCS 5/444 (West 1992)). This issue was not included, however, in plaintiffs' motion for partial summary judgment, and the circuit court thus did not address it.

2:
Section 133(2) requires that corporate books, records, documents, accounts and vouchers be preserved and kept available in Illinois. 215 ILCS 5/133(2) (West 1992).

3:
The plaintiff also challenged the tax as violative of the commerce clause. The Court rejected this argument, noting that “Congress removed all Commerce Clause limitations on the authority of the States to regulate and tax the business of insurance when it passed the McCarran-Ferguson Act [citation], as this court acknowledged in State Board of Insurance v. Todd Shipyards Corp. 370 U.S. 451, 452[, 8 L. Ed. 2d 620, 622, 82 S. Ct. 1380, 1381] (1962).” 
Western & Southern
, 451 U.S. at 653, 68 L. Ed. 2d at 520, 101 S. Ct. at 2075.