Docket No. 93836–Agenda 16–November 2002.

ARANGOLD CORPORATION, d/b/a Arango Cigar Company, Appellant, v. KENNETH E. ZEHNDER, Director of Revenue, 
et al
., Appellees.

Opinion filed March 20, 2003.

JUSTICE GARMAN delivered the opinion of the court:

This case concerns the constitutionality of the Tobacco Products Tax Act of 1995 (Act) (35 ILCS 143/10–10 
et seq.
 (West 2000)). The trial and appellate courts upheld the Act against challenges based upon the Illinois due process clause (Ill. Const. 1970, art. I, §2) and the uniformity clause (Ill. Const. 1970, art. IX, §2). We granted leave to appeal (177 Ill. 2d R. 315) and we now affirm.

I. BACKGROUND

Plaintiff, Arangold Corporation, is an Illinois corporation doing business as a wholesale tobacco distributor of noncigarette tobacco products, such as cigars and chewing tobacco. Arangold is subject to the Act, which imposes a tax on such products. Proceeds from the tax are deposited into the Long-Term Care Provider Fund of the State Treasury (Fund). 35 ILCS 143/10–10 (West 2000). Disbursements from the Fund are made to skilled and intermediate nursing facilities under Title XIX of the Social Security Act, known as the Medicaid program, and pursuant to article V of the Illinois Public Aid Code (305 ILCS 5/5B–8(b)(1) (West 2000)). These programs provide medical care for people whose income and resources are inadequate to meet their medical needs.

In November 1995, Arangold brought an action in the circuit court of Cook County challenging the constitutionality of the tax imposed by the Act. It alleged that the Act contravened the federal due process and equal protection clauses (U.S. Const., amend. XIV), the Illinois due process and equal protection clauses (Ill. Const. 1970, art. I, §2), the uniformity clause of the Illinois constitution (Ill. Const. 1970, art. IX, §2), and the Illinois constitution’s prohibition on special legislation (Ill. Const. 1970, art. IV, §13). The trial court denied Arangold’s motion for summary judgment on all counts of its complaint. Arangold subsequently amended its complaint to challenge Public Act 89–21, the legislative enactment that included the Act, on the basis that it violated the single subject rule of the Illinois constitution (Ill. Const. 1970, art. IV, §8(d)). In April 1998, the trial court granted summary judgment to Arangold on its single subject claim. A direct appeal was taken to this court due to the finding of unconstitutionality. In July 1999, this court reversed, finding no single subject violation, and remanded the cause to the trial court for further proceedings. 
Arangold Corp. v. Zehnder
, 187 Ill. 2d 341 (1999).

In March 2000, defendants filed a motion for summary judgment as to all of Arangold’s constitutional claims. Following oral argument, the trial court granted the motion. Arangold appealed to the appellate court, which affirmed the trial court’s decision. 329 Ill. App. 3d 781.

II. ANALYSIS

A. Standard of Review

Summary judgment is proper where “the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” 735 ILCS 5/2–1005(c) (West 2000). A trial court’s grant of summary judgment is reviewed 
de novo
. 
Morris v. Margulis
, 197 Ill. 2d 28, 35 (2001).

The constitutionality of a statute is also reviewed 
de novo
. 
Miller v. Rosenberg
, 196 Ill. 2d 50, 57 (2001). Statutes carry a strong presumption of constitutionality. 
People ex rel. Ryan v. World Church of the Creator
, 198 Ill. 2d 115, 120 (2001). The party challenging a statute carries the burden of rebutting that presumption and “clearly establishing” its unconstitutionality. 
Russell v. Department of Natural Resources
, 183 Ill. 2d 434, 441 (1998). This court has a duty to uphold the constitutionality of a statute whenever reasonably possible. 
City of Chicago v. Morales
, 177 Ill. 2d 440, 448 (1997).

B. Due Process

In this court, Arangold has abandoned its federal constitutional claims, as well as its Illinois equal protection and special legislation claims, choosing to pursue only its Illinois due process and uniformity claims. We first address Arangold’s due process arguments.

The Act neither involves a suspect classification nor impinges on a fundamental right. Accordingly, to comport with due process, it must bear a rational relationship to the public interest sought to be served and the means adopted to accomplish this goal must be reasonable. 
Messenger v. Edgar
, 157 Ill. 2d 162, 176 (1993); 
Russell
, 183 Ill. 2d at 447. In applying the rational basis test, a court must identify the public interest that the statute is intended to protect, examine whether the statute bears a reasonable relationship to that interest, and determine whether the method used to protect or further that interest is reasonable. 
People v. Lindner
, 127 Ill. 2d 174, 180 (1989). Rational basis review is limited (
Miller
, 196 Ill. 2d at 59) and “highly deferential” (
Committee for Educational Rights v. Edgar
, 174 Ill. 2d 1, 33 (1996)). As long as there is any reasonably conceivable state of facts showing that the legislation is rational, it must be upheld. 
People v. Hamm
, 149 Ill. 2d 201, 216 (1992). Whether a statute is wise or whether it is the best means to achieve the desired result are matters left to the legislature, not the courts. 
People v. Shephard
, 152 Ill. 2d 489, 503 (1992). The judgments made by the legislature in crafting a statute are not subject to courtroom fact finding and may be based on rational speculation unsupported by evidence or empirical data. 
Cutinello v. Whitley
, 161 Ill. 2d 409, 421-22 (1994).

Defendants argue that the government interest at stake–funding medical care for the poor in long-term care facilities–is legitimate and that the General Assembly could reasonably have found that tobacco products cause diseases requiring such care.

Revenues collected pursuant to the Act are used to pay the cost of long-term medical care for those persons unable to bear the cost of such care themselves. The State has a legitimate interest in preserving the health of its citizens (
New Energy Co. of Indiana v. Limbach
, 486 U.S. 269, 279, 100 L. Ed. 2d 302, 312, 108 S. Ct. 1803, 1810 (1988)) and in assisting the poor to meet their needs (
Carmichael v. Southern Coal & Coke Co.
, 301 U.S. 495, 515, 81 L. Ed. 1245, 1256, 57 S. Ct. 868, 875 (1937)). The General Assembly may have believed that the use of tobacco products causes a variety of health problems and that such problems require long-term medical care. With respect to those persons who lack the resources to afford such care, the General Assembly may have believed that responsibility to pay rests with the state and that those, such as Arangold, whose products impose such costs on the state, should bear some measure of those costs through the taxing of their products.

Recognizing that litigants may not challenge the factual underpinnings of the General Assembly’s legislative judgments under due process analysis (
People ex rel. Lumpkin v. Cassidy
, 184 Ill. 2d 117, 124 (1998)), Arangold challenges the method chosen in the Act to fund long-term care for the poor. It argues that the tax imposed by the Act is arbitrary and unreasonable because it selectively targets for taxation distributors of cigars and chewing tobacco to fund a general welfare program of the state, designed to benefit a broad range of taxpayers. It principally relies on two cases decided by this court, 
Crocker v. Finley
, 99 Ill. 2d 444 (1984), and 
Boynton v. Kusper
, 112 Ill. 2d 356 (1986).

In 
Crocker
, the plaintiff challenged the constitutionality of a $5 fee charged to all petitioners for dissolution of marriage. The fee was assessed in addition to the usual filing fees and, pursuant to statute, was collected to fund shelters and other services for victims of domestic violence. This court invalidated the fee, which, in reality, was a tax, on the basis that it conflicted with the Illinois constitutional right to obtain justice by law freely (Ill. Const. 1970, art. I, §12). Recognizing that statutes imposing litigation taxes are not necessarily unconstitutional, we determined that court filing fees and taxes may be imposed only for purposes relating to the operation and maintenance of the courts. We found such a requirement to be inherent in the constitutional right to obtain justice freely. “If the right to obtain justice freely is to be a meaningful guarantee, it must preclude the legislature from raising general revenue through charges assessed to those who would utilize our courts.” 
Crocker
, 99 Ill. 2d at 455. We also held the fee violative of due process. Focusing on the means chosen by the legislature to fund domestic violence shelters and programs, we noted that these services were available to all adults and their dependents who are the subjects of domestic violence. There was no requirement that recipients of the services be married or divorced, yet the legislature chose to tax dissolution petitioners as a means of funding the programs. Doing so caused the members of that class to bear the cost of maintaining this public welfare program, while excluding other classes of taxpayers who would also benefit from the programs. 
Crocker
, 99 Ill. 2d at 456-57.

In 
Boynton
, we struck down a similar fee imposed upon those who applied for marriage licenses. The statute required county clerks to pay $10 of the fee collected for issuance of a marriage license into the Domestic Violence Shelter and Service Fund. The plaintiffs challenged this portion of the license fee as an unconstitutional tax violative of due process and uniformity of taxation. Finding our decision in 
Crocker
 controlling, we held that the fee violated the Illinois due process clause. We first noted that the fee was a tax, as it bore no relationship to the county clerk’s service of issuing and recording marriage licenses. Its sole purpose was to raise revenue for the domestic violence fund. We noted that, “[i]n considering the reasonableness of a classification from a due process point of view, under either the police power or the taxing power of the State, ‘it must appear that the particular classification is based upon some real and substantial difference in kind, situation or circumstance in the persons or objects on which the classification rests, and which bears a 
rational relation
 to the evil to be remedied and the purpose to be attained by the statute ***.’ (Emphasis in original.)” 
Boynton
, 112 Ill. 2d at 366-67, quoting 
Grasse v. Dealer’s Transport Co.
, 412 Ill. 179, 193-94 (1952). Like the tax on dissolution petitioners in 
Crocker
, the tax on marriage licenses in 
Boynton
 rested upon an arbitrary classification. We held that the relationship between the purchase of a marriage license and domestic violence was too remote to satisfy the rational basis test. A contrary finding would open the door to the imposition of the costs of other social programs upon marriage license applicants. 
Boynton
, 112 Ill. 2d at 367-68.

Arangold argues that 
Crocker
 and 
Boynton
 prohibit the targeting of a narrow group of taxpayers to fund a general welfare program. However, Arangold’s reliance on those cases is misplaced. In 
Crocker
 and 
Boynton
, this court found the relationship between dissolution actions and marriage licenses on the one hand and domestic violence programs on the other to be too remote to permit the tax to stand. The main thrust of the 
Crocker
 decision was its holding that the tax unconstitutionally burdened litigants’ access to the courts. In 
Boynton
, while we engaged in a rational basis analysis, we also noted that the tax directly impeded the fundamental right to marry and that it failed to satisfy the heightened strict scrutiny standard of review. 
Boynton
, 112 Ill. 2d at 369. Here, Arangold conceded in the appellate court that the General Assembly could have believed that “cigars, pipes, chewing tobacco, and other tobacco products cause any number of health problems and that those problems require care in long-term health care facilities.” 329 Ill. App. 3d at 792. Accordingly, we do not have the same remoteness problem here as existed in 
Crocker
 and 
Boynton
.

In addition, we note that the activities being taxed in 
Crocker
 and 
Boynton
 were constitutionally protected, unlike Arangold’s activities here. We also point out that the objective of the taxes imposed in those cases was, at least in part, to provide a benefit to those taxed in the form of domestic violence programs. However, in neither case was it clear that most of those taxed would benefit from the services, yet the services were available to others not taxed. The tax imposed on Arangold, in contrast, is not intended to provide any benefit to it or any other member of the taxed class. Even could it be said that Arangold’s products impose no costs on the state for the long-term care of the poor, we note that “[n]othing is more familiar in taxation than the imposition of a tax upon a class or upon individuals who enjoy no direct benefit from its expenditure, and who are not responsible for the condition to be remedied.” 
Carmichael
, 301 U.S. at 521-22, 81 L. Ed. at 1260, 57 S. Ct. at 878.

Due process neither prohibits taxing one group to benefit another nor does it require that those taxed benefit directly from the tax. “A tax is not an assessment of benefits. It is, as we have said, a means of distributing the burden of the cost of government. The only benefit to which the taxpayer is constitutionally entitled is that derived from his enjoyment of the privileges of living in an organized society, established and safeguarded by the devotion of taxes to public purposes. [Citation.] Any other view would preclude the levying of taxes except as they are used to compensate for the burden on those who pay them, and would involve the abandonment of the most fundamental principle of government–that it exists primarily to provide for the common good.” 
Carmichael
, 301 U.S. at 522-23, 81 L. Ed. at 1260-61, 57 S. Ct. at 878-79.

Arangold argues that this court has found 
Carmichael
 to be inconsistent with the Illinois due process clause, citing 
Boynton
. However, the majority there did not even cite 
Carmichael
, much less discuss its viability for Illinois due process purposes. While it is true that this court will construe the Illinois due process clause independently of its federal counterpart (
Lewis E. v. Spagnolo
, 186 Ill. 2d 198, 227 (1999)), and we have interpreted it to provide greater protections in appropriate cases (
e.g.
, 
People v. Washington
, 171 Ill. 2d 475, 485-86 (1996); 
People v. McCauley
, 163 Ill. 2d 414, 440 (1994)), Arangold presents no compelling reason to do so here. As noted by defendants and the appellate court, many tax statutes in Illinois impose taxes on specific groups of taxpayers and earmark the proceeds for special funds. See, 
e.g.
, 35 ILCS 120/3 (West 2000) (Retailers’ Occupation Tax Act); 35 ILCS 130/2 (West 2000) (Cigarette Tax Act); 35 ILCS 145/3(b) (West 2000) (Hotel Operators’ Occupation Tax Act).

We conclude, therefore, that the trial court did not err in granting summary judgment to defendants on Arangold’s due process claim.

C. Uniformity Clause

Arangold next challenges the Act as violative of the uniformity clause of the Illinois constitution, which provides:

“In any law classifying the subjects or objects of nonproperty taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly. Exemptions, deductions, credits, refunds and other allowances shall be reasonable.” Ill. Const. 1970, art. IX, §2.

To survive scrutiny under the uniformity clause, a nonproperty tax classification must (1) be based on a real and substantial difference between the people taxed and those not taxed, and (2) bear some reasonable relationship to the object of the legislation or to public policy. 
Milwaukee Safeguard Insurance Co. v. Selcke
, 179 Ill. 2d 94, 98 (1997). The uniformity clause was intended to be a broader limitation on legislative power to classify for nonproperty tax purposes than the limitation of the equal protection clause (
Searle Pharmaceuticals, Inc. v. Department of Revenue
, 117 Ill. 2d 454, 469 (1987)) and was meant to insure that taxpayers would receive added protection in the state constitution based upon a standard of reasonableness that is more rigorous than that contained in the federal constitution (
Milwaukee Safeguard
, 179 Ill. 2d at 102). The party attacking a tax classification is not required to negate every conceivable basis that might support it. 
Searle
, 117 Ill. 2d at 468. When faced with a good-faith uniformity challenge, the taxing body bears the initial burden of producing a justification for the classification. The challenging party then has the burden of persuading the court that the taxing body’s explanation is insufficient as a matter of law or unsupported by the facts. 
Geja’s Cafe v. Metropolitan Pier & Exposition Authority
, 153 Ill. 2d 239, 248-49 (1992); 
Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority
, 172 Ill. 2d 243, 255 (1996). Despite the more stringent standard under the uniformity clause, the scope of a court’s inquiry is “relatively narrow.” 
Allegro
, 172 Ill. 2d at 250. “[I]n a uniformity clause challenge the court is not required to have proof of perfect rationality as to each and every taxpayer. The uniformity clause was not designed as a straitjacket for the General Assembly. Rather, the uniformity clause was designed to enforce minimum standards of reasonableness and fairness as between groups of taxpayers.” 
Geja’s Cafe
, 153 Ill. 2d at 252.

We note that before the appellate court, Arangold abandoned its claim that the Act discriminates between different classes of competing tobacco distributors. Thus, only the second prong of the uniformity clause is involved here.

Arangold argues that the tax imposed is “arbitrarily underinclusive” in relation to the stated legislative objective. According to Arangold, taxpayers who are equally or more related to the Act’s stated purpose are excluded from paying the tax. It argues there is medical evidence that alcohol, red meat, and eggs are associated with diseases requiring long-term medical care. In support of its argument, Arangold cites this court’s decisions in 
Searle
 and 
Milwaukee Safeguard
. 
Searle
 involved a tax law that permitted corporations which were members of an affiliated corporate group filing a separate federal income tax return to carry back net operating losses for Illinois tax purposes. However, corporations that were members of an affiliated corporate group filing a consolidated federal income tax return were not permitted to carry back such losses. The asserted justification for the difference in tax treatment was administrative convenience and fiscal planning. This court found that there was no real and substantial difference between the two groups of taxpayers. 
Searle
, 117 Ill. 2d at 469. In 
Milwaukee Safeguard
, the law treated two classes of insurance companies–foreign companies and domestic companies–differently, imposing a tax only on foreign companies doing business in Illinois for the privilege of doing business in the State. After examining the defendants’ justification for the law, this court found that, although the classification of foreign and domestic insurance companies was based on a real and substantial difference between the two groups, the classification was not reasonably related to the objective of the law. 
Milwaukee Safeguard
, 179 Ill. 2d at 102.

We reject Arangold’s argument. Here, in contrast to 
Searle
 and 
Milwaukee Safeguard
, we are not required to consider whether there are differences between classes of persons or entities. We need only determine whether the tax classification bears some reasonable relationship to the object of the legislation.

Citing 
Crocker
, Arangold complains that the Act improperly selectively imposes a tax only on cigars and chewing tobacco products for the sole purpose of funding a general welfare program, thus making it “arbitrarily limited in relation to its legislative objective.” Arangold finds no rational justification for “arbitrarily” targeting noncigarette tobacco products for taxation to fund nursing home care for the indigent, while other taxpayers equally or more related to that objective are not taxed. Thus, according to Arangold, the legislature may not tax it and its fellow tobacco distributors because, even assuming a relationship between the class taxed and the objective of the law, the legislature was bound to tax all those who are equally or more related to the objective. Arangold’s citation of 
Crocker
 is unavailing, as 
Crocker
 was not a uniformity case. Arangold cites no other case supporting its theory of taxation. We note that perfect rationality is not required as to each taxpayer. A minimum standard of reasonableness is all that is required. See 
Geja’s Cafe
, 153 Ill. 2d at 252. In any event, we are not concerned here with the question of whether the legislature should have taxed everyone who may contribute to diseases that require long-term nursing home care. We need only consider whether there is a reasonable relationship between the taxation of Arangold and its fellow tobacco distributors and the objective of the Act.

We are likewise unpersuaded by Arangold’s argument that the uniformity clause prohibits taxing a narrow group to fund a general welfare program of the state. Arangold’s citation of 
Crocker
 for this contention is once again unavailing. 
Crocker
 was decided under the free access clause and, to a lesser extent, under the due process clause. It was not a uniformity case. Arangold cites no case that supports its argument.

Arangold argues that defendants admitted in the trial court that they have no evidence linking use of cigars and chewing tobacco to diseases requiring long-term care. Arangold bases this assertion on defendants’ failure to answer a request for admissions. It argues that the more rigorous standard of reasonableness in uniformity analysis requires the state to produce facts justifying the tax classification. Arangold cites no cases so holding. In 
Geja’s Cafe
, we clarified the burdens placed on the parties in a uniformity challenge. We stated that the challenging party is not required to prove that every conceivable explanation for the tax is unreasonable. Rather, the taxing body must “produce a justification for its classifications. The plaintiff then has the burden to persuade the court that the defendant’s explanation is insufficient as a matter of law, or unsupported by the facts ***.” 
Geja’s Cafe
, 153 Ill. 2d at 248-49. Similarly, in 
Milwaukee Safeguard
, we noted that when faced with a good-faith uniformity challenge, the taxing body has the initial burden of 
producing a justification
 for the classification. Thereafter, the party challenging the tax has the “burden of persuading the court that the justification offered is unsupported by the facts or insufficient as a matter of law.” 
Milwaukee Safeguard
, 179 Ill. 2d at 98-99. Arangold cites no cases in which this court has held that a taxing body bears an 
evidentiary
 burden in justifying the tax in a uniformity challenge. Rather, the above-cited cases demonstrate that the taxing body need only assert a justification for the classification. It is the plaintiff who then has the evidentiary burden of proving that the asserted justification is unsupported by the facts. The more rigorous standard of reasonableness in uniformity analysis simply allows the plaintiff to mount a good-faith uniformity challenge without having the initial burden of disproving every conceivable explanation for the tax. The ultimate burden remains with the plaintiff, however, to demonstrate that the taxing body’s asserted justification is unsupported by the facts or insufficient as a matter of law. To hold otherwise would undermine the well-settled principle that a statute bears a strong presumption of constitutionality and that the party challenging the statute has the burden of demonstrating the statute’s unconstitutionality.

Turning to the case before us, the objective of the Act, as defendants assert, is to provide funds for the care of those persons who lack the resources to pay for long-term care in skilled or intermediate nursing homes. Further, defendants assert that the Act taxes tobacco distributors because their products cause diseases that conceivably require long-term care for those persons who cannot pay for it. Defendants having asserted a justification for the tax, it was then Arangold’s burden to come forward with evidence showing that the asserted justification was unsupported by the facts. We agree with the appellate court that Arangold failed to satisfy that burden. Although they were not required to do so, defendants submitted documentary evidence with their summary judgment motion, in an effort to demonstrate the connection between use of tobacco products and a variety of diseases, such as heart disease, lung disease, circulatory system diseases, and various forms of cancer. It is by now beyond dispute that the use of tobacco products can cause a variety of serious and debilitating diseases, including heart disease, respiratory diseases and cancer. As the appellate court noted, the National Nursing Home Survey, submitted to the trial court by Arangold, shows that 30% of all persons admitted to long-term nursing care were diagnosed with diseases of the circulatory system, respiratory disease, or cancer. 329 Ill. App. 3d at 799. In addition, data presented to the trial court by defendants from the Illinois Department of Public Health demonstrate that, in 1994, almost two-thirds of all Illinois nursing home residents received public assistance in paying for their care. In response, Arangold offered the affidavits of Dr. Phillip A. Immesoete, a nursing home medical director at seven Illinois nursing homes, and Jay Lewkowitz, a nursing home administrator and social worker. Both men stated that, in their experience, they had seen no causal link between the use of noncigarette tobacco products and nursing home admissions. We find such anecdotal evidence insufficient to prove that defendants’ asserted justification for the tax is unsupported by the facts. We therefore conclude that the tax imposed under the Act bears a reasonable relationship to the objective of the Act and that it does not violate the uniformity clause. Accordingly, the trial court properly granted summary judgment to defendants on Arangold’s uniformity claim.

III. CONCLUSION

For the reasons stated, we affirm the judgment of the appellate court.

Appellate court judgment affirmed.