Docket No. 103849.

IN THE

SUPREME COURT

OF

THE STATE OF ILLINOIS

SUN LIFE ASSURANCE COMPANY OF CANADA, Appellant, v.
DEIRDRE K. MANNA, Acting Director of Insurance, *et al.*,
Appellees.

*Opinion filed November 29, 2007.*

JUSTICE FITZGERALD delivered the judgment of the court,
with opinion.

Chief Justice Thomas and Justices Freeman, Kilbride, Garman,
Karmeier, and Burke concurred in the judgment and opinion.

**OPINION**

Sun Life Assurance Company of Canada (Sun Life) brought a
declaratory judgment action against the Director of Insurance for the
State of Illinois, and the Division of Insurance of the Illinois
Department of Financial and Professional Regulation (Division),
claiming that Illinois' retaliatory tax (215 ILCS 5/444 (West 2006))
on alien corporations is unconstitutional. The circuit court found that
the tax was constitutional. The appellate court affirmed. 368 Ill. App.
3d 591. This appeal raises three issues: whether the Retaliatory Tax
violates the uniformity clause of the Illinois Constitution (Ill. Const.
1970, art. IX, §2); whether the United States Congress, through the
language of the McCarran-Ferguson Act (15 U.S.C. §1012 (2000)),

has authorized Illinois to impose a retaliatory tax upon Sun Life, an alien corporation; and, if not, whether the retaliatory tax violates the so-called dormant commerce clause of the United States Constitution (U.S. Const., art. I, §8, cl. 3). For the following reasons, we affirm the judgment of the appellate court.

BACKGROUND

The Illinois Insurance Code classifies insurance companies doing business in Illinois into three categories. Illinois insurers are "domestic"; insurers organized under the state laws of the United States other than Illinois are "foreign"; and insurers organized under the laws of another country are "alien." Sun Life is a corporation organized under the laws of Canada doing business in Illinois. Therefore, it is considered an "alien" insurance company under the Illinois Insurance Code.

The two relevant taxes on insurance companies for purposes of this appeal are the privilege tax and the retaliatory tax. Domestic, foreign, and alien insurance companies pay a privilege tax to do business in Illinois. 215 ILCS 5/409, 413 (West 2006). The privilege tax is equal to 0.5% of their net premium income "for the privilege of doing business in this State." 215 ILCS 5/409(1) (West 2006). The retaliatory tax, however, is not imposed on domestic companies; it is only imposed on foreign and alien companies. 215 ILCS 5/444.1 (West 2006).

The retaliatory tax provision (215 ILCS 5/444 (West 2006)) provides, in part,

"Whenever the existing or future laws of any other state or country shall require of companies incorporated or organized under the laws of this State as a condition precedent to their doing business in such other state or country, compliance with laws, rules, regulations, and prohibitions more onerous or burdensome than the rules and regulations imposed by this State on foreign or alien companies, or shall require any deposit of securities or other obligations in such state or country, for the protection of policyholders or otherwise or require of such companies or agents thereof or brokers the payment of penalties, fees, charges, or taxes greater than the

-2-

penalties, fees, charges, or taxes required in the aggregate for like purposes by this Code or any other law of this State, of foreign or alien companies, agents thereof or brokers, then such laws, rules, regulations, and prohibitions of said other state or country shall apply to companies incorporated or organized under the laws of such state or country doing business in this State, and all such companies, agents thereof, or brokers doing business in this State, shall be required to make deposits, pay penalties, fees, charges, and taxes, in amounts equal to those required in the aggregate for like purposes of Illinois companies doing business in such state or country, agents thereof or brokers." 215 ILCS 5/444(1) (West 2006).

The purpose of the retaliatory tax is "to promote the interstate business of domestic insurance companies and thus attempt to prevent other states from handicapping Illinois domestic companies with excessive taxes." *Trinity Universal Insurance Co. v. O'Connor*, 113 Ill. App. 3d 560, 563-64 (1983); *Pacific Mutual Life Insurance Co. of California v. Lowe*, 354 Ill. 398, 405-06 (1933).

The Department of Insurance has promulgated regulations to determine the retaliatory tax on foreign and alien companies. 50 Ill. Adm. Code §2515.10 *et seq.*, amended at 24 Ill. Reg. 10228, eff. July 1, 2000. The Illinois Administrative Code provides that a retaliatory tax is due from a foreign or alien insurance company if the sum of its "State of Illinois basis" is less than the sum of its "state of incorporation's basis" (50 Ill. Adm. Code §2515.50) and then sets out a formula to determine the retaliatory tax. According to the Administrative Code, "State of Illinois' Basis means the taxes, fees and charges in the aggregate assessed against and paid by a company transacting insurance business in the State of Illinois" 50 Ill. Adm. Code §2515.40. The Administrative Code also defines the "State of Incorporation's Basis" as:

> "State of Incorporation's Basis means the taxes, fees and charges that would have been assessed against and paid by an Illinois company if it had similar operation in the state of domicile of the foreign or alien company, as the foreign or alien company had in Illinois. *** *If applicable, the state of domicile for the alien company may mean its port or state of*

*entry* or, for an alien Lloyds, the state in which it maintains its assets in compliance with Article V of the Code." (Emphasis added.) 50 Ill. Adm. Code §2515.40.

Sun Life uses the State of Michigan as its "port of entry" to conduct its United States branch business. Therefore, the Division determined that Sun Life's state of incorporation basis would be determined by its port of entry in Michigan.

Sun Life consistently paid the privilege tax for the years it operated in Illinois. Sun Life, however, did not pay the retaliatory tax for the years 1997-2003 because it argued that it would owe no Canadian tax on its life insurance business in Canada. Because Sun Life owed tax and fees under the Illinois tax law but not under the Canadian tax law, it determined that its Canadian tax basis was not higher than its Illinois tax basis and that it owed no retaliatory tax. According to the Division, Illinois companies doing insurance business in Michigan are charged more in aggregate taxes and fees than Illinois charges Michigan companies doing the same insurance business in Illinois. Accordingly, basing its retaliatory tax audit on Michigan tax, the Division assessed Sun Life $4,010,743 in retaliatory taxes for 1997 through 2003.

Sun Life filed a declaratory action in the circuit court of Cook County. It sought a declaration that Illinois is not authorized to impose a discriminatory retaliatory tax on insurance business conducted by alien companies in Illinois. Sun Life asserted the retaliatory tax violates the uniformity clause of the Illinois Constitution, the equal protection clause of the Illinois Constitution, and the foreign commerce clause of the United States Constitution. Both parties filed motions for summary judgment. On March 23, 2005, the circuit court granted defendant's motion for summary judgment and denied plaintiff's motion for summary judgment. Sun Life appealed.

The appellate court first held that the retaliatory tax did not violate the uniformity clause of the Illinois Constitution (Ill. Const. 1970, art. IX, §2). The appellate court stated, "[w]hether an alien insurer must actually pay a retaliatory tax depends entirely on the tax laws of its own state of incorporation, not on the retaliatory tax statute." 368 Ill. App. 3d at 596. It noted that in an interstate context, the United States Supreme Court in *Western & Southern Life Insurance Co. v.*

-4-

*State Board of Equalization*, 451 U.S. 648, 68 L. Ed. 2d 514, 101 S. Ct. 2070 (1981), held that the retaliatory tax is not " 'imposed on [alien] corporations *qua* [alien] corporations \*\*\*; it is imposed only on corporations whose home States impose more onerous burdens on [Illinois] insurers than [Illinois] otherwise would impose on those corporations.' " 368 Ill. App. 3d at 596. Further, the " ' "ultimate object is not to punish foreign corporations doing business in the state \*\*\* but to induce such foreign state to show the same consideration to corporations of the enacting state doing business therein as is shown to corporations of such foreign state doing business in the enacting state." ' " 368 Ill. App. 3d at 597, quoting *Western & Southern Life Insurance Co. v. State Board of Equalization*, 451 U.S. at 668-69, 68 L. Ed. 2d at 531, 101 S. Ct. at 2083, quoting P. Vartanian, Annotation, *Constitutionality, Construction, Operation and Effect of Retaliatory Statutes Against Foreign Corporations Doing Business Within the State*, 91 A.L.R. 795, 795 (1934). The court then considered whether this could be applied in the international context, discussing the principles enunciated in our decision in *Springfield Rare Coin Galleries, Inc. v. Johnson*, 115 Ill. 2d 221 (1986). The appellate court found the retaliatory tax to be an "incidental" intrusion, as "[t]he tax is not directed at one particular nation, being applied to all alien insurers equally." 368 Ill. App. 3d at 600. The appellate court also noted that because the retaliatory tax on alien insurers is valid under the uniformity clause, it is also valid under the equal protection clause. 368 Ill. App. 3d at 600-01.

The appellate court next considered the case under the commerce clause. The appellate court rejected Sun Life's interpretation that the McCarran-Ferguson Act, a federal statute ceding regulation of insurance to the states, operates to remove only domestic restrictions on interstate insurance regulation. It noted that the United States Supreme Court in *Western & Southern Life Insurance Co.*, 451 U.S. at 655, 68 L. Ed. 2d at 522, 101 S. Ct. at 2076 (1981), stated that " 'the McCarran-Ferguson Act *removes entirely any Commerce Clause restriction* upon California's power to tax the insurance business.' " (Emphasis in original.) 368 Ill. App. 3d at 602. The appellate court, following both the plain language of the McCarran-Ferguson Act and United States Supreme Court precedent, interpreted the Act to mean that there is no limitation in the Act to domestic

enterprises. It explained, "Although *Western & Southern Life Insurance Co.* is an interstate commerce case, its pronouncement that the McCarran-Ferguson Act 'removes entirely any' commerce clause restrictions on a state's taxation of insurance is categorical. *All* such restrictions are eliminated by the Act. If Congress intended that states could only tax interstate commerce, it failed to say so and the United States Supreme Court has yet to interpret the Act in this manner." (Emphasis in original.) 368 Ill. App. 3d at 602. The appellate court further held that even if the McCarran-Ferguson Act did not remove foreign commerce clause restrictions, its treatment of alien insurers is not discriminatory and its impact on allowing the federal government to speak with one voice is negligible. 368 Ill. App. 3d at 602.

We allowed Sun Life's petition for leave to appeal. 210 Ill. 2d R. 315(a). We allowed the National Association of Insurance Commissioners to file a brief of *amicus curiae*.

ANALYSIS

Summary judgment is appropriate where the pleadings show that there is no genuine issue as to any material fact. 735 ILCS 5/2–1005(c) (West 2006). All cases involving summary judgment are reviewed *de novo*. *Quad Cities Open, Inc. v. City of Silvis*, 208 Ill. 2d 498, 508 (2004); *Arangold Corp. v. Zehnder*, 204 Ill. 2d 142, 146 (2003). The constitutionality of a statute is also reviewed *de novo*. *Arangold*, 204 Ill. 2d at 146. Statutes carry a strong presumption of constitutionality and the party challenging a statute carries the burden of rebutting that presumption and "clearly establishing" its unconstitutionality. *Arangold*, 204 Ill. 2d at 146. The three issues are as follows: whether the retaliatory tax violates the uniformity clause of the Illinois Constitution (Ill. Const. 1970, art. IX, §2); whether the United States Congress, through the language of the McCarran-Ferguson Act (15 U.S.C. §1012 (2000)), has authorized Illinois to impose a retaliatory tax upon Sun Life, an alien corporation; and, if not, whether the retaliatory tax violates the so-called dormant commerce clause of the United States Constitution (U.S. Const., art. I, §8, cl. 3).

*Uniformity Clause*

We first address Sun Life's argument that the retaliatory tax is in violation of the uniformity clause of the Illinois Constitution. Ill. Const. 1970, art. IX, §2. The uniformity clause of the Illinois Constitution is a "specific limitation on the General Assembly in the exercise of its taxing power." *Searle Pharmaceuticals, Inc. v. Department of Revenue*, 117 Ill. 2d 454, 466-67 (1987). The clause provides, in relevant part, that "[i]n any law classifying the subjects or objects of nonproperty taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly." Ill. Const. 1970, art. IX, §2. To survive scrutiny under the uniformity clause, a tax classification: (a) must be based on a real and substantial difference between the persons taxed and those not taxed, and (b) must bear some reasonable relationship to the object of the legislation or to public policy. *Arangold Corp.*, 204 Ill. 2d at 153; *Milwaukee Safeguard Insurance Co. v. Selcke*, 179 Ill. 2d 94, 98 (1997). After a taxpayer establishes a good-faith challenge to the discriminatory tax, the burden shifts back to the taxing body to produce a justification for the tax. *Milwaukee Safeguard Insurance Co.*, 179 Ill. 2d at 102. Only then does the burden shift back to the taxpayer to demonstrate that the purported justification is unsupported by the facts or is insufficient as a matter of law. *Arangold Corp.*, 204 Ill. 2d at 153.

Sun Life asserts that the retaliatory tax establishes a discriminatory taxing classification because it is imposed on foreign and alien insurance companies and not on Illinois domestic companies. Thus, an alien insurer like Sun Life must pay higher Illinois taxes than an Illinois-domiciled company on the same amount of Illinois business. Sun Life further asserts that there is no legitimate state purpose for the retaliatory tax on alien insurers, relying primarily on our decisions in *Springfield Rare Coin Galleries, Inc. v. Johnson*, 115 Ill. 2d 221 (1986), and *National Commercial Banking Corp. of Australia, Ltd. v. Harris*, 125 Ill. 2d 448 (1988). The Division responds that there is no discrimination in the retaliatory tax statute's treatment of alien insurers, as the statute applies to all alien insurers. It does not discriminate against one alien company in favor of another or against companies from a particular country. Further, according to the Division, the statute has a legitimate purpose. Both *Springfield Rare*

*Coin* and *National Commercial Banking* are easily distinguishable as the nondiscriminatory retaliatory tax's legitimate purpose is to equalize tax burdens, which has only an incidental effect, if any, on foreign affairs.

Preliminarily, we agree with the Division that the appellate court correctly found, "[t]here is no discrimination in the retaliatory tax statute's treatment of alien insurers. The statute applies to all alien insurers uniformly. It does not discriminate against one alien company in favor of another or against companies from a particular country." 368 Ill. App. 3d at 596. Nevertheless, even if such discrimination existed, the retaliatory tax has a legitimate purpose to equalize tax burdens, which only has an incidental effect on foreign affairs. An examination of *Springfield Rare Coin* and *National Commercial Banking* demonstrate this legitimacy.

In *Springfield Rare Coin*, the Illinois legislature passed a tax on the Krugerrand, a gold coin issued from South Africa. *Springfield Rare Coin*, 115 Ill. 2d at 226. At that time, the apartheid policy was still in place, and "the plain purpose behind the exclusion was to avoid the appearance of encouraging South African investment." *Springfield Rare Coin*, 115 Ill. 2d at 226. In considering the question of whether the taxing body had a legitimate purpose for the law, we noted, " 'The States have a very wide discretion in the laying of their taxes. When dealing with their proper domestic concerns, and not trenching upon the prerogatives of the National Government *** the States have the attribute of sovereign powers in devising their fiscal systems to ensure revenue and foster their local interests.' " *Springfield Rare Coin*, 115 Ill. 2d at 232, quoting *Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522, 526, 3 L. Ed. 2d 480, 484, 79 S. Ct. 437, 440 (1959).

The states' discretion, however, is tempered by "[t]he power possessed by the Federal government to establish and carry out foreign policy is plenary and exclusive." *Springfield Rare Coin*, 115 Ill. 2d at 233. This is because the United States must speak with "one voice" in dealing with foreign nations. *Springfield Rare Coin*, 115 Ill. 2d at 233. We summarized the balance between federal and state prerogatives by stating,

> "Despite these broad principles, it would be an obvious oversimplification and wrong to assert that no State law which has any impact whatsoever upon foreign relations may ever

stand. For example, the fact that Illinois imposes taxes upon imported products generally can be said to have some effect on foreign nations. Clearly, such incidental, evenhanded burdens do not rise to the level of unconstitutionality." *Springfield Rare Coin*, 115 Ill. 2d at 233.

We then cited examples of cases where a state had gone beyond its proper domestic concerns. Such cases included a state statute regarding probate rules governing inheritance from residents of authoritarian nations; a state statute denying admission to students of Iran to its universities; a statute fostering a "Buy American" campaign; and another state statute imposing a *de facto* embargo of South African products. *Springfield Rare Coin*, 115 Ill. 2d at 234-36. We noted that the line between incidental and unconstitutional intrusions into foreign affairs cannot be demarcated precisely. However, an unconstitutional exclusion may include the following attributes: (1) the sole purpose of the law must be disapproval of a nation's policies; (2) the exclusion is targeted at a single foreign nation; (3) and the practical effect is to encourage an economic boycott. *Springfield Rare Coin*, 115 Ill. 2d at 236. We found the tax on the Krugerrands was not motivated by a legitimate purpose, holding

"only that disapproval of the political and social policies of a foreign nation does not provide a valid basis for a tax classification by this State. The State may not exercise its otherwise wide-ranging taxing power for the purpose of encouraging a boycott of a single nation's products." *Springfield Rare Coin*, 115 Ill. 2d at 237.

We now consider whether the retaliatory tax had a legitimate purpose following the principles we set forth in *Springfield Rare Coin*.

Unlike *Springfield Rare Coin*, the retaliatory tax at issue does not contain the sole motivation of disapproval of another nation's policies. The exclusion is not "targeted at a single foreign nation." The practical effect is not "an economic boycott." Here, all foreign and alien insurance companies must pay the tax, regardless of their origin. Further, the Administrative Code designates that the retaliatory tax is calculated according to the taxes of an alien corporation's port of entry, not the alien corporation's home country. 50 Ill. Adm. Code §2515.40. Sun Life's retaliatory tax payment is triggered by the high tax rates of its port of entry in Michigan, rather than its status as an

alien company. Thus, the retaliatory tax's legitimate purpose of equalizing tax burdens between states bars Sun Life's challenge. Further, the tax does not result in a boycott and is properly termed "incidental" because it is retaliating against the Michigan tax, *not* any Canadian tax regime. Accordingly, while it may have some effect on international commerce, such effect is only incidental to its purpose of inducing Michigan to lower its retaliatory tax. Sun Life has presented no evidence that the retaliatory tax statute or accompanying regulations are intended to influence Canadian law in any way.

Sun Life's citation of *National Commercial Banking*, 125 Ill. 2d 448 (1988), is inapposite. In that case, a federal statute provided that foreign banks would have the same rights as banks from other states. An Illinois statute, however, limited the rights of foreign banks. This court held that, under the supremacy clause of the United States Constitution, the Illinois statute was preempted. *National Commercial Banking*, 125 Ill. 2d at 466. Here, Sun Life makes no further argument that the retaliatory tax conflicts with any federal statute. Therefore, our ruling in *National Commercial Banking* has no bearing on Sun Life's uniformity clause argument and is therefore inapposite.

Accordingly, the retaliatory tax is not prohibited by the uniformity clause of the Illinois Constitution.

### *Commerce Clause*

We now turn to Sun Life's contention that the retaliatory tax on alien companies violates the commerce clause. The commerce clause of the United States Constitution (U.S. Const., art. I, §8) provides that "The Congress shall have Power *** To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." The commerce clause bars states from enacting laws that burden interstate or international commerce without express congressional permission, even if Congress has not enacted any conflicting legislation. *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 66 L. Ed. 2d 659, 101 S. Ct. 715 (1981). Our threshold question is whether Congress, through the McCarran-Ferguson Act (15 U.S.C. §1012 (2000)), has given Illinois this express permission to impose the present retaliatory tax.

-10-

We briefly provide some background to regulation of the business of insurance by the states as interpreted by the United States Supreme Court. Before 1944, courts nationwide denied constitutional challenges to states' insurance taxes, including retaliatory taxes, even by alien insurance companies. Primarily, the court decisions were based on *Paul v. Virginia*, 75 U.S. 168, 19 L. Ed. 357 (1869), which held that the business of insurance was not commerce. Importantly, the Supreme Court referred to both interstate and international business, as it stated, "If foreign bills of exchange may thus be the subject of State regulation, much more so may contracts of insurance ***." *Paul*, 75 U.S. at 184-85, 19 L. Ed. at 361. The Supreme Court continued to recognize that the insurance business involved alien companies in *New York Life Insurance Co. v. Deer Lodge County*, 231 U.S. 495, 510, 58 L. Ed. 332, 338, 34 S. Ct. 167, 172 (1913). It stated, "The argument was anticipated in *Paul v. Virginia*, *** where, as we have seen, a tax on money and exchange brokers who dealt in the purchase and sale of foreign bills of exchange was sustained as not conflicting with the constitutional power of Congress to regulate commerce among the States *or with foreign nations*." (Emphasis added.) *New York Life Insurance Co.*, 231 U.S. at 510, 58 L. Ed. at 338, 34 S. Ct. at 172.

In 1944, in *United States v. South-Eastern Underwriters Ass'n*, 322 U.S. 533, 88 L. Ed. 1440, 64 S. Ct. 1162 (1944), the Supreme Court held for the first time that the business of insurance was commerce, overruling 75 years of precedent. The immediate congressional response to this was the McCarran-Ferguson Act, the same statute at issue here. After its passage, the Supreme Court stated that the McCarran-Ferguson Act "transformed the legal landscape by overturning normal rules of pre-emption." *United States Department of Treasury v. Fabe*, 508 U.S. 491, 507, 124 L. Ed. 2d 449, 463, 113 S. Ct. 2202, 2211 (1993). That is, "Congress' primary objective" was "granting the States broad regulatory authority over the business of insurance." *Fabe*, 508 U.S. at 505, 124 L. Ed. 2d at 462, 113 S. Ct. at 2210. Congress achieved this purpose by " 'removing obstructions which might be thought to flow from [Congress'] own power, whether dormant or exercised, except as otherwise expressly provided in the Act itself or in future legislation.' " *Fabe*, 508 U.S. at 500, 124 L. Ed. 2d at 459, 113 S. Ct. at 2207, quoting *Prudential Insurance*

*Co. v. Benjamin*, 328 U.S. 408, 429-30, 90 L. Ed. 1342, 1360, 66 S. Ct. 1142, 1155 (1946). Further, Congress was " 'declaring expressly and affirmatively that continued state regulation and taxation of this business is in the public interest and that the business and all who engage in it "shall be subject to" the laws of the several states in these respects.' " *Fabe*, 508 U.S. at 500, 124 L. Ed. 2d at 459, 113 S. Ct. at 2207 quoting *Prudential Insurance Co.*, 328 U.S. at 430, 90 L. Ed. at 1360, 66 S. Ct. at 1155.

Indeed, the Supreme Court has twice upheld the constitutionality of taxes imposed on foreign corporations. In *Prudential Insurance Co. v. Benjamin*, the Supreme Court held that the McCarran-Ferguson Act empowered the State of South Carolina to impose a license tax on an insurance business incorporated in New Jersey while domestic corporations were not taxed. *Prudential Insurance Co.*, 328 U.S. at 414, 90 L. Ed. at 1351, 66 S. Ct. at 1146-47. The Court found the Act's reference to "continued regulation" to be significant in that it must have been aware of the entirety of state regulation before the *South-Eastern* decision:

> "Moreover, in taking this action Congress must have had full knowledge of the nation-wide existence of state systems of regulation and taxation; of the fact that they differ greatly in the scope and character of the regulations imposed and of the taxes exacted; and of the further fact that many, if not all, include features which, to some extent, have not been applied generally to other interstate business. Congress could not have been unaquainted with these facts and its purpose was evidently to throw the whole weight of its power behind the state systems." *Prudential Insurance Co.*, 328 U.S. at 430, 90 L. Ed. at 1360, 66 S. Ct. at 1155.

In *Western & Southern Life Insurance Co. v. State Board*, 451 U.S. 648, 68 L. Ed. 2d 514, 101 S. Ct. 2070, the Supreme Court found retaliatory taxes did not violate the commerce and equal protection clauses because it found that imposing retaliatory taxes supported the legitimate purpose of equalizing insurance taxes. In doing so, the Supreme Court stated that "the McCarran-Ferguson Act removes entirely any Commerce Clause restriction upon California's power to tax the insurance business." *Western & Southern Life Insurance Co.*, 451 U.S. at 655, 68 L. Ed. 2d at 522, 101 S. Ct. at 2076. Further, the

Supreme Court stated that "Congress removed all Commerce Clause limitations on the authority of the States to regulate and tax the business of insurance when it passed the McCarran-Ferguson Act." *Western & Southern Life Insurance Co.*, 451 U.S. at 653, 68 L. Ed. 2d at 520, 101 S. Ct. at 2075.

With this in mind, we consider whether Congress, through the McCarran-Ferguson Act, has authorized the retaliatory tax at issue. Where clear and unambiguous, statutory language must be enforced as enacted. *Town & Country Utilities, Inc. v. Illinois Pollution Control Board*, 225 Ill. 2d 103 (2007). The McCarran-Ferguson Act provides, in pertinent part:

> "Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States." 15 U.S.C. §1011 (2000).

> "The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business." 15 U.S.C. §1012(a) (2000).

Congress has never subsequently enacted legislation prohibiting the imposition of any retaliatory taxes on alien insurers.

Sun Life argues that the McCarran-Ferguson Act solely allows retaliatory taxation of foreign corporations (from the other 49 states), rather than additional taxation on alien corporations. Sun Life points to the United States Supreme Court decision in *American Insurance Ass'n v. Garamendi*, 539 U.S. 396, 156 L. Ed. 2d 376, 123 S. Ct. 2374 (2003), as well as seven cases purporting to demonstrate that the McCarron-Ferguson Act applies only to interstate commerce. Sun Life further directs us to a Senate judiciary committee report dated 15 years after the passage of the McCarran-Ferguson Act. The Division responds that the plain language of the McCarran-Ferguson Act, as interpreted by the United States Supreme Court cases delineated above, demonstrates that Congress did not provide any limit to the states ability to impose retaliatory taxes, including those on alien corporations. We agree with the Division.

-13-

We find that the plain language of the McCarran-Ferguson Act imposes no limitation on the imposition of a retaliatory tax on an alien insurer. The McCarran-Ferguson Act provides that there will not be "any barrier" on the regulation of "every person" involved in the "business of insurance." 15 U.S.C. §§1011, 1012(a) (2000). We read this to mean that alien insurers are within the ambit of the McCarran-Ferguson Act. Our interpretation is consistent with the United States Supreme Court, which stated, "the McCarran-Ferguson Act removes entirely any Commerce Clause restriction upon California's power to tax the insurance business." *Western & Southern Life Insurance Co.*, 451 U.S. at 655, 68 L. Ed. 2d at 522, 101 S. Ct. at 2076. The United States Supreme Court emphasized, "Congress removed *all* Commerce Clause limitations on the authority of the States to regulate and tax the business of insurance when it passed the McCarran-Ferguson Act." (Emphasis added.) *Western & Southern Life Insurance Co.*, 451 U.S. at 653, 68 L. Ed. 2d at 520, 101 S. Ct. at 2075.

Sun Life does not attempt to construe the plain language of the McCarran-Ferguson Act but instead primarily relies on *American Insurance Ass'n v. Garamendi*, 539 U.S. 396, 156 L. Ed. 2d 376, 123 S. Ct. 2374 (2003). However, *Garamendi* concerned a California statute involving proceeds from life insurance polices taken by Germany during the Third Reich. A majority of the Court found the statute conflicted with the presidential power to conduct foreign affairs and was preempted on that basis. *Garamendi*, 539 U.S. at 429, 156 L. Ed. 2d at 405, 123 S. Ct. at 2394. We again note that Sun Life's argument is lessened by its failure to acknowledge that the Division imposes the retaliatory tax on Sun Life due to the taxes of Michigan, its port of entry state, and not according to any Canadian tax. This accords with the purpose of the retaliatory tax, which is "to promote the interstate business of domestic insurance companies and thus attempt to prevent other States from handicapping Illinois domestic companies with excessive taxes." *Trinity Universal Insurance Co.*, 113 Ill. App. 3d at 563-64; *Pacific Mutual Life Insurance Co. of California*, 354 Ill. at 405-06. The statute implicated in *Garamendi* was explicitly directed at the actions of a foreign country, not another state.

Similarly, Sun Life's additional citations are preemption cases where state and federal law were in conflict, and did not consider

retaliatory taxes. Finally, we do not consider Sun Life's proffer of a Senate report 15 years after the legislation because we have found the language of the Act unambiguous and need not resort to extrinsic aids.

Accordingly, because the McCarran-Ferguson Act permits the states to regulate alien insurers, we need not consider the third issue and, thus, we find that there is no commerce clause restriction on the retaliatory tax.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the appellate court.

*Appellate court judgment affirmed.*