No. 3–09–1056

Opinion filed January 27, 2011

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2011

| | | |
|---|---|---|
| EMPRESS CASINO JOLIET CORPORATION, an Illinois Corporation, DES PLAINES DEVELOPMENT LIMITED PARTNERSHIP, an Illinois Limited Partnership d/b/a Harrah's Casino Cruises Joliet, HOLLYWOOD CASINO-AURORA, INC., an Illinois Corporation, and ELGIN RIVERBOAT RESORT-RIVERBOAT CASINO, an Illinois General Partnership d/b/a Grand Victoria Casino, | ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | |
| ALEXI GIANNOULIAS, in His Official Capacity as Treasurer of the State of Illinois, and ILLINOIS RACING BOARD, | ) ) ) ) | No. 09-CH-112 |
| Defendants-Appellees | ) ) | |
| (Balmoral Racing Club, Inc., an Ohio Corporation; Maywood Park Trotting Association, Inc., an Illinois Corporation; Arlington Park Racecourse, LLC, an Illinois Corporation; and Hawthorne Race Course, Inc., an Illinois Corporation, | ) ) ) ) ) ) | |
| Intervenor Defendants-Appellees). | ) ) ) | Honorable Barbara Petrungaro, Judge, Presiding. |

PRESIDING JUSTICE CARTER delivered the judgment of the court, with opinion.
Justice Lytton and Schmidt concurred in the judgment, with opinion.

**OPINION**

Plaintiffs, four state-licensed riverboat casinos (the casinos), brought suit against the State Treasurer and the Illinois Racing Board (collectively referred to as the state defendants) challenging the constitutionality of Public Act 95-1008 (Pub. Act 95-1008, §10 (eff. Dec. 15, 2008)), which required the casinos to pay 3% of their adjusted gross receipts (AGR) into a fund to be distributed to the state's horse racing tracks. Four owners of horse racing tracks in this state and the Illinois Harness Horsemen's Association (collectively referred to as the racetracks) were allowed to intervene in the suit. The state defendants and the racetracks filed motions to dismiss the complaint pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2008)). The trial court granted the motions to dismiss. The casinos appeal.

FACTS

In December of 2008, the governor signed Public Act 95-1008 (the 2008 Act) into law. The Act required that the riverboat casinos of the state pay 3% of their AGR into the Horse Racing Equity Trust Fund on a daily basis for a three-year period to be distributed to the horse racing tracks in the state for various specified purposes. Pub. Act 95-1008, §10 (eff. Dec. 15, 2008) (amending 230 ILCS 10/7 (West 2006)). Casinos with 2004 AGR under $200 million were exempt from the tax. Pub. Act 95-1008, §10 (eff. Dec. 15, 2008) (amending 230 ILCS 10/7 (West 2006)). In passing the Act, the legislature found that riverboat gambling had damaged the horse racing industry in the state by luring away gambling dollars and that the 3% tax was necessary to reverse the damage. See Pub. Act 95-1008, §1 (eff. Dec. 15, 2008). Of the nine riverboat casinos in the state, only four had AGR in excess of $200 million in 2004 or in 2007. Those casinos, the plaintiffs in the present case, were all located in the upper portion of the state. The remaining five riverboat casinos, which were located downstate, did not have AGR in excess of $200 million in 2004 or in 2007.

2

In January of 2009, the casinos filed a complaint for declaratory and injunctive relief, challenging the constitutionality of the 2008 Act. The casinos sought a declaration that the Act was unconstitutional and a permanent injunction against the imposition or collection of the 3% tax. The casinos paid the tax under protest pursuant to the State Officers and Employees Money Disposition Act (30 ILCS 230/2(a) (West 2008)). The state defendants were named as defendants in the complaint and the racetracks were allowed to intervene.

The initial complaint in this case was later amended. The amended complaint (hereinafter referred to as the complaint) alleged, among other things, that the 2008 Act violated the uniformity clause of the Illinois Constitution (Ill. Const. 1970, art. IX, §2) in that there was no real and substantial difference between the casinos that were required to pay the 3% tax and those that were not. The casinos alleged further that the classification could not be based upon neutral principles, such as the ability to pay the tax, because the legislature used the 2004 AGR to create the classification for the 2008 Act, despite the legislature's knowledge that circumstances had significantly changed and that the casinos were facing a large decline in AGR due to a smoking ban and poor economic conditions. The complaint noted that the 2008 Act was the second time that the legislature imposed a 3% tax on the casinos to subsidize the racetracks. In 2006, the legislature passed Public Act 94-804 (the 2006 Act), which imposed a 3% tax on the riverboat casinos of the state, whose 2004 AGR was over $200 million, to be paid on a daily basis for a two-year period. Pub. Act 94-804, §1(5) (eff. May 26, 2006) (amending 230 ILCS 10/7 (West 2004)). The 2008 Act was essentially identical to the 2006 Act. The casinos previously challenged the constitutionality of the 2006 Act and alleged in that case, among other things, that the 2006 Act violated the uniformity clause. The trial court found that the 2006 Act was unconstitutional. The supreme court reversed

3

the trial court, however, and found that the use of 2004 AGR was reasonable and that the 2006 Act did not violate the uniformity clause. See *Empress Casino Joliet Corp. v. Giannoulias*, 231 Ill. 2d 62, 78-80 (2008) (*Empress I*).

The state defendants and the racetracks filed motions to dismiss the complaint pursuant to sections 2-615 and 2-619, alleging collectively that the casinos were barred by the holding in *Empress I* from raising the same uniformity-clause challenge to the 2008 Act and that there was no legal merit to the casinos' uniformity-clause challenge. The trial court granted the motions to dismiss on the basis of collateral estoppel. It was not quite clear from the trial court's order, however, whether the trial court granted dismissal pursuant to section 2-615, section 2-619, or both. The casinos appealed.

ANALYSIS

On appeal, the casinos argue that the trial court erred in granting the motions to dismiss their complaint for declaratory and injunctive relief. The casinos assert that their complaint was sufficient to establish that the tax classification contained in the Act is arbitrary and unreasonable and that it violates the uniformity clause of the Illinois Constitution. The state defendants and the racetracks collectively argue that the trial court's ruling was proper and should be affirmed, either on the merits or on the basis of collateral estoppel.[1]

A motion to dismiss filed pursuant to either section 2-615 or section 2-619 of the Code of Civil Procedure admits all well-pled facts in the complaint and the reasonable inferences to be drawn from those facts. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 184 (1997). When ruling upon either type of motion to dismiss, the trial court must interpret all pleadings and supporting documents

---

[1]Only the racetracks argue collateral estoppel as a basis for affirming the trial court's ruling on appeal.

4

in the light most favorable to the nonmoving party. *Chicago Flood Litigation*, 176 Ill. 2d at 189. A trial court's ruling granting either type of motion to dismiss is subject to *de novo* review on appeal (*Chicago Flood Litigation*, 176 Ill. 2d at 189) and may be affirmed on any basis supported by the record (*Material Service Corp. v. Department of Revenue*, 98 Ill. 2d 382, 387 (1983)).

The constitutionality of a statute is also subject to *de novo* review on appeal. *Empress I*, 231 Ill. 2d at 69. " 'Statutes bear a presumption of constitutionality, and broad latitude is afforded to legislative classifications for taxing purposes.' " *Empress I*, 231 Ill. 2d at 69 (quoting *Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority*, 172 Ill. 2d 243, 250 (1996)). A party challenging a nonproperty tax classification has the burden to rebut the presumption of constitutionality and to clearly establish that the statute is unconstitutional by showing that the statute is arbitrary or unreasonable. *Empress I*, 231 Ill. 2d at 69. A reviewing court has a duty to uphold a statute as constitutional whenever it is reasonably possible to do so. *Empress I*, 231 Ill. 2d at 69.

The uniformity clause, contained in article IX, section 2, of the Illinois Constitution, provides:

> "In any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly. Exemptions, deductions, credits, refunds and other allowances shall be reasonable." Ill. Const. 1970, art. IX, §2.

The uniformity clause provides for a broader limitation on legislative power to classify for nonproperty tax purposes than the limitation that is provided for by the equal protection clause. *Empress I*, 231 Ill. 2d at 72-73. In a uniformity-clause challenge, however, the scope of a court's inquiry is relatively narrow. *Empress I*, 231 Ill. 2d at 73. A court is not required to have proof of perfect rationality as to every taxpayer. *Empress I*, 231 Ill. 2d at 73. "The uniformity clause was not

5

designed as a straitjacket for the General Assembly. Rather, the uniformity clause was designed to enforce minimum standards of reasonableness and fairness as between groups of taxpayers." *Geja's Café v. Metropolitan Pier & Exposition Authority*, 153 Ill. 2d 239, 252 (1992).

To survive a uniformity-clause challenge, " 'a nonproperty tax classification must (1) be based on a real and substantial difference between the people taxed and those not taxed, and (2) bear some reasonable relationship to the object of the legislation or to public policy.' " *Empress I*, 231 Ill. 2d at 69 (quoting *Arangold Corp. v. Zehnder*, 204 Ill. 2d 142, 153 (2003)). When a plaintiff challenges a legislative classification, he has the burden of showing that the classification is arbitrary or unreasonable. *Geja's Café*, 153 Ill. 2d at 248. If a set of facts can reasonably be conceived that would sustain the legislative classification, the classification must be upheld. *Geja's Café*, 153 Ill. 2d at 248. In a uniformity-clause challenge, the plaintiff is not required to negate every conceivable basis that might support the tax classification. *Empress I*, 231 Ill. 2d at 72. Rather, once the plaintiff has established a good-faith uniformity-clause challenge, the burden shifts to the taxing body to produce a justification for the tax classification. *Empress I*, 231 Ill. 2d at 72. If the taxing body does so, the burden shifts back to the plaintiff to persuade the court that the justification is insufficient, either as a matter of law or as unsupported by the facts. *Empress I*, 231 Ill. 2d at 72. If the plaintiff fails to meet that burden, judgment is proper for the taxing body as a matter of law. *Empress I*, 231 Ill. 2d at 72.

In the present case, as with *Empress I*, the parties do not dispute that the Act creates two classifications: (1) all casinos, and (2) casinos with 2004 AGR of over $200 million. The question before this court is whether those two classifications are arbitrary or unreasonable so as to render the Act unconstitutional under the uniformity clause. See *Empress I*, 231 Ill. 2d at 73. The justification for the two classifications is that casinos with 2004 AGR of over $200 million are better able to

6

absorb the tax that is imposed by the 2008 Act. Since a justification has been produced, it is incumbent upon the casinos to establish that the justification is insufficient as a matter of law or that it is unsupported by the facts. The casinos have failed in that burden.

It is clear from the record that regardless of whether the 2004 AGR is used or the 2007 AGR, the same four casinos, located upstate, exceeded the $200 million level, and the five remaining casinos, located downstate, did not exceed the $200 million level. Those same four casinos have been the highest grossing casinos in Illinois for the past several years prior to the enactment of the 2008 Act. Thus, the legislature's determination that those four casinos were in the best position to absorb the tax for three years following the enactment of the 2008 Act was not arbitrary or unreasonable. As our supreme court noted in *Empress I*, it would be impractical, inconceivable, and logistically impossible to try to measure the casinos' AGR at the time that the tax is to be paid since the casinos are required to pay the tax on a daily basis. See *Empress I*, 231 Ill. 2d at 79. The legislature had to pick a measuring point. The use of the 2004 AGR by the legislature as the measuring point for the 2008 Act was not unreasonable, especially because in this case, as the legislature pointed out in enacting the 2008 Act, the supreme court had just upheld the use of the 2004 AGR as the measuring point for the 2006 Act, which for the most part was identical to the 2008 Act. See Pub. Act 95-1008, §1 (eff. Dec. 15, 2008). In addition, there was no significant difference between the 2004 AGR and the 2007 AGR, as the same four casinos would still have been the only casinos subject to the tax if the most recent annual figures, the 2007 AGR, had been used. The casinos' argument to the contrary in this case advocates the use of a different measuring point that would consider circumstances that arose after the passing of the 2008 Act and the impact of those circumstances on the casinos at the time the tax is to be paid. As noted above, however, our supreme court specifically rejected that argument in *Empress I* and found it to be impractical, inconceivable, and logistically impossible. See

7

*Empress I*, 231 Ill. 2d at 79, 896 N.E.2d at 290. In addition, it is clear that when the 2008 Act was passed, the legislature had considered the changes in the economic climate as it related to the casinos. It is not our role here to determine whether the 2008 Act is wise or whether a better tax line could have been drawn. See *Empress I*, 231 Ill. 2d at 74; *Geja's Café*, 153 Ill. 2d at 252. Rather, our role in this case is to determine if the 2008 Act is constitutional. See *Empress I*, 231 Ill. 2d at 74. We find that the 2008 Act in this case does not violate the uniformity clause.

Having determined that the casinos' uniformity-clause challenge cannot be sustained on the merits, we need not determine whether the casinos' challenge is also barred under the doctrine of collateral estoppel. See *Material Service Corp.*, 98 Ill. 2d at 387.

For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

Affirmed.