# Illinois Official Reports

## Appellate Court

---

### *Carroll v. Raoul*, 2020 IL App (3d) 180550

---

| | |
|---|---|
| Appellate Court Caption | SAMANTHA M. CARROLL, Executor of the Estate of Sharon A. Maloney, Deceased, Plaintiff-Appellant, v. KWAME RAOUL, in His Official Capacity as Attorney General of the State of Illinois; and MICHAEL W. FRERICHS, in His Official Capacity as Treasurer of the State of Illinois, Defendants-Appellees. |
| District & No. | Third District<br>No. 3-18-0550 |
| Filed | March 13, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Tazewell County, No. 15-P-163; the Hon. Kirk D. Schoenbein, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Valerie M. Moehle, of Moehle, Swearingen & Lobacz, Ltd., of Pekin, and John R. Simpson, of Sorling Northrup, of Springfield, for appellant.<br><br>Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Christopher M.R. Turner, Assistant Attorney General, of counsel), for appellees. |

PRESIDING JUSTICE LYTTON delivered the judgment of the court, with opinion.
Justices O'Brien and Wright concurred in the judgment and opinion.


**OPINION**

¶ 1       Plaintiff, Samantha M. Carroll, as executor of the estate of Sharon A. Maloney, filed an action against the Illinois Attorney General and the Illinois State Treasurer under the State Officers and Employees Money Disposition Act (commonly known as the Protest Monies Act) (30 ILCS 230/2a (West 2016)), seeking a declaration that the estate was entitled to a credit for taxes paid on prior transfers against its Illinois estate tax. The Attorney General moved to dismiss the complaint, claiming that the credit was not authorized under the Illinois Estate and Generation-Skipping Transfer Tax Act (Estate Tax Act) (35 ILCS 405/1 *et seq.* (West 2016)). The circuit court granted the Attorney General's motion, and plaintiff appeals from that order. We affirm.

¶ 2                                      I. BACKGROUND

¶ 3       Sharon Maloney died on May 21, 2015, leaving behind an estate valued at approximately $6.57 million.[1] Sharon's parents preceded her in death. In 2007, Sharon's mother, Loraine Moehle, died, leaving Sharon farmland worth $1,038,974.43. Loraine's estate paid federal estate taxes of $66,993 and state estate taxes of $62,947. In 2011, Sharon's father, Melvin Moehle, passed away, leaving her $2,167,366.86 in assets. At that time, Melvin's estate paid federal estate taxes in the amount of $1,866,945 and Illinois estate taxes in the amount of $1,091,417.

¶ 4       In 2016, the estate filed federal and state tax returns. On the Illinois tax return, the estate reported a credit of $181,348.23 for prior estate taxes paid on the property transferred from her parents' estates. After conducting an audit, the Attorney General sent a letter to the estate stating that the credit for taxes paid on prior transfers (referred to as a "prior transfer credit") did not exist under the Estate Tax Act. The Attorney General noted that the federal tax credit for prior transfers had no impact on the amount of Illinois estate tax due and concluded that estate still owed $175,052.77 in state taxes.

¶ 5       Under protest, the estate paid $193,942[2] to the State Treasurer pursuant to the Protest Monies Act. The executor then filed a complaint for declaratory and injunctive relief against the Attorney General and the State Treasurer.[3] The complaint alleged that (1) the estate was entitled to $181,348 in "prior transfer credits" under the Estate Tax Act and sections 2011 and 2013 of the Internal Revenue Code (Code) (26 U.S.C. §§ 2011, 2013 (2000)), (2) the Attorney

---

[1]At the time of Sharon's death, the federal exemption for federal estate tax purposes was $5.43 million (see 26 U.S.C. § 1 *et seq.* (2012)) and the state exemption for state estate tax purposes was $4 million (see 35 ILCS 405/2(b) (West 2014)).

[2]The amount paid represented the Illinois estate tax due plus interest.

[3]The State Treasurer, Michael W. Frerichs, answered the complaint and asked the trial court to determine the correct distribution of the amount paid under protest. The State Treasurer did not file a brief on appeal.

General was bound by prior policy and representations to allow the estate to claim the prior transfer credit and that the policy could not be changed without proper notice, and (3) the Attorney General's refusal to apply the prior transfer credit violated the uniformity clause of the Illinois Constitution (Ill. Const. 1970, art. IX, § 2). In support of its claim that the Attorney General's office was bound by prior representations, the estate asserted that

> "the Attorney General told the Plaintiff that, in the case of a situation in which the estate was required to file an Illinois estate tax return but was not required to file a federal tax return, the State of Illinois would honor any election or credit that would be available on the federal return if the federal exemption were $4 million."

¶ 6 The Attorney General moved to dismiss the complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2016)). In its motion, the Attorney General argued that the Code permitted such a credit for *federal* purposes but that, pursuant to the plain language of section 2013 of the Code, the prior transfer credit was available only as a credit against the federal estate tax, not the Illinois estate tax. The Attorney General also noted that section 2011 of the Code provided a credit against the federal estate tax for death taxes paid to the state, commonly referred to as the state death tax credit, but that section 2011 did not permit use of the prior transfer credit in calculating the state death tax. The Attorney General argued that the complaint should be dismissed because plaintiff failed to state a cause of action, as no provision under the Estate Tax Act or the Code permitted the estate to claim the prior transfer credit against the state estate tax.

¶ 7 The trial court granted the Attorney General's motion, holding that the Estate Tax Act did not authorize use of the prior transfer credit to calculate the amount due for state tax purposes. The court agreed with the Attorney General that the federal tax code only allowed a prior transfer credit against federal estate taxes. Concluding that there was no set of facts to support any of the estate's claims, the trial court granted the Attorney General's motion with prejudice.

¶ 8                                II. ANALYSIS

¶ 9 On appeal, plaintiff claims that the trial court erred in dismissing the complaint because a plain reading of the state statute and the federal tax code together leads to an interpretation of the Estate Tax Act that allows for a credit for prior transfers for state estate taxes as well as federal estate taxes. She also asserts the alternative claims raised below, arguing that (1) the Attorney General's interpretation of the Estate Tax Act runs counter to prior representations and violates due process and (2) the denial of the prior transfer credit for state estate taxes violates the uniformity clause of the Illinois Constitution.

¶ 10                A. Statutory Construction of the Estate Tax Act

¶ 11 The primary purpose of the Estate Tax Act is to collect revenue. *Brooker v. Madigan*, 388 Ill. App. 3d 410, 418 (2009). The original tax under the Estate Tax Act achieved this purpose by assessing, or picking up, the maximum amount of credit permitted under federal law for estate taxes paid to the state. *Id.* at 411. The Estate Tax Act calculated the Illinois tax based upon "the maximum state tax credit allowable" under section 2011 of the Code. See 35 ILCS 405/2, 3 (West 2000).

¶ 12 The federal Economic Growth and Tax Relief Reconciliation Act of 2001 (Reconciliation Act) (Pub. L. 107-16, 115 Stat. 38) amended the Code to phase out the state tax credit and the

diversion of estate tax funds from the federal government to the states. See *id.* §§ 531, 532, 115 Stat. at 72-73; see also Kevin M. Bohl, Note, *The Resurrection of the Death Tax: Decoupling and the Economic Growth and Tax Relief Reconciliation Act of 2001*, 13 Elder L.J. 417, 420-22 (2005). Beginning in 2002, the federal code reduced the state tax credit in stages until it repealed the credit completely in 2005 and replaced it with a deduction for state taxes rather than a credit. Reconciliation Act §§ 531, 532 (codified at 26 U.S.C. § 2011(b)).

¶ 13    Faced with the prospect of losing estate tax revenues under its "pick-up" tax, the Illinois legislature amended the Estate Tax Act in 2003 to decouple it from the Code's phase-out of the state tax credit. *McGinley v. Madigan*, 366 Ill. App. 3d 974, 977 (2006); see also 21A Ill. L. and Prac. *Inheritance and Transfer Taxes* § 5 (2007). Under the amended version, the state statute defines the Illinois estate tax by retaining the prior tax rates imposed under the federal state tax credit as in effect on December 31, 2001. See 35 ILCS 405/2, 3 (West 2016). Specifically, section 3 of the Estate Tax Act provides that "[o]n estates of persons dying on or after January 1, 2003, the amount of the Illinois estate tax shall be the state tax credit, as defined in Section 2 of this Act." *Id.* § 3(c). Section 2 defines a "state tax credit" as:

> "(b) For persons dying after December 31, 2005 and on or before December 31, 2009, and for persons dying after December 31, 2010, an amount equal to the full credit calculable under Section 2011 *** of the Internal Revenue Code as the credit would have been computed and allowed under the Internal Revenue Code as in effect on December 31, 2001, without the reduction in the State Death Tax Credit as provided in Section 2011(b)(2) or the termination of the State Death Tax Credit as provided in Section 2011(f) as enacted by the Economic Growth and Tax Relief Reconciliation Act of 2001, but recognizing the exclusion amount of only (i) $2,000,000 for persons dying prior to January 1, 2012, (ii) $3,500,000 for persons dying on or after January 1, 2012 and prior to January 1, 2013, and (iii) $4,000,000 for persons dying on or after January 1, 2013, and with reduction to the adjusted taxable estate for any qualified terminable interest property election as defined in subsection (b-1) of this Section." *Id.* § 2(b).

¶ 14    The principal objective of statutory construction is to ascertain and give effect to the legislature's intent. *Caveney v. Bower*, 207 Ill. 2d 82, 87-88 (2003). The best evidence of legislative intent is the language used in the statute itself, which must be given its plain, ordinary, and popularly understood meaning. *Id.* at 88. A court must give effect to the entire statutory scheme and construe all words and phrases in light of other relevant statutory provisions. *Stern v. Wheaton-Warrenville Community Unit School District 200*, 233 Ill. 2d 396, 410 (2009). Where that language is clear and unambiguous, courts must apply words of the statute without resorting to extrinsic aids of statutory construction. *Caveney*, 207 Ill. 2d at 88. Courts may not depart from the statute's plain language by reading exceptions or limitations into it. *Lohr v. Havens*, 377 Ill. App. 3d 233, 236 (2007). When a taxpayer seeks a credit or deduction under a tax statute, the statute is strictly construed in favor of taxation. *Balmoral Racing Club, Inc. v. Topinka*, 334 Ill. App. 3d 454, 457-58 (2002); see *Bodine Electric Co. v. Allphin*, 81 Ill. 2d 502, 512-13 (1980) (taxpayers are not entitled to deductions "unless clearly allowed by statute" (internal quotation marks omitted)).

¶ 15    Applying these rules to the amended provisions of the Estate Tax Act, the statutory language provides a clear path for the calculation of Illinois estate tax. The plain language of section 3 states that the Illinois estate tax is equal to the "state tax credit" as defined under section 2 of the act. 35 ILCS 405/3 (West 2016). Section 2 defines a "state tax credit" as the

"full credit calculable under section 2011 \*\*\* of the Internal Revenue Code as the credit would have been computed and allowed under the Internal Revenue Code as in effect on December 31, 2001." *Id.* § 2(b). Thus, the plain language of the Estate Tax Act calculates the Illinois estate tax based on the state death tax credit under section 2011 of the federal code.

¶ 16    Section 2011 of the Code is entitled "Credit for State death taxes." As of December 31, 2001, section 2011(a) provides:

> "The tax imposed \*\*\* shall be credited with the amount of any estate, inheritance, legacy, or succession taxes actually paid to any State or the District of Columbia, in respect of any property included in the gross estate (not including any such taxes paid with respect to the estate of a person other than the decedent)." 26 U.S.C. § 2011(a) (2000).

Section 2011(b) includes a table for calculating the state death tax credit. Using that table, the state death tax credit is calculated using a sliding scale formula. For example, an estate with assets valued over $4.04 million but not over $5.04 million has a state death tax credit of $290,800, plus 11.2% of the excess over $4.04 million. 26 U.S.C. § 2011(b) (2000). Thus, the proper calculation of Illinois estate tax for an estate with assets valued at $4.5 million is $290,800, plus $51,520, for a total of $342,320. In other words, the proper calculation of Illinois estate tax is the amount of the state death tax credit calculated under section 2011 of the federal code, as of December 31, 2001.

¶ 17    We disagree with plaintiff's assertion that our interpretation of the Estate Tax Act ignores the interrelation of the act and the Code. The purpose of the amendment to the Estate Tax Act was "to preserve Illinois's estate tax revenue stream of revenue." *Brooker*, 388 Ill. App. 3d at 413. To carry out this goal, section 2 was amended to redefine the state tax credit under section 2011 of the Code, as it was defined on December 31, 2001, before the Reconciliation Act was adopted. 35 ILCS 405/2(a), (b) (West 2016). Nowhere in section 2011 of the Code does it mention prior transfer credits, nor does it reference section 2013 of the Code, the federal prior transfer credit provision. To the contrary, section 2011(a) specifically states that the credit for state death taxes does not include "any such taxes paid with respect to the estate of a person other than the decedent." 26 U.S.C. § 2011(a) (2000). We note that the payment of a state estate tax for the prior transfer of the same property by a parent's estate is a "tax[ ] paid with respect to the estate of a person other than the decedent." *Id.* Thus, based on the plain language of section 2011(a), a credit for prior transfers is not permitted in the calculation of the state tax credit.

¶ 18    Moreover, the Estate Tax Act's reference to provisions and terms used in the Code reflects that the General Assembly was explicit when it intended to incorporate a particular provision from the Code to calculate the Illinois estate tax. See *Zahn v. North American Power & Gas, LLC*, 2016 IL 120526, ¶ 23 (refusing to infer legislative intent regarding specific issue where statute elsewhere "said so specifically"); *Vine Street Clinic v. HealthLink, Inc.*, 222 Ill. 2d 276, 282, 290 (2006) (statutes should be construed as a whole and their words and phrases in light of "other relevant provisions" rather than in isolation (internal quotation marks omitted)). The Estate Tax Act, however, does not refer to section 2013 of the Code or a "prior transfer credit." Its plain language explicitly calculates the state estate tax by determining the state tax credit that was calculable under section 2011 prior to implementation of the Reconciliation Act. See 35 ILCS 405/2(b), 3 (West 2016).

¶ 19    As we have indicated, the Estate Tax Act and the Code provide a clear path for defining the state tax credit for purposes of calculating Illinois estate tax. The plain terms of the state and federal statutes included in our analysis of that path do not impose a prior transfer credit in the calculation of the state tax. Accordingly, the trial court correctly rejected the executor's proposed reading of the statute and concluded that the Estate Tax Act does not allow a prior transfer credit against the Illinois estate tax.

¶ 20                                    B. Due Process and Estoppel

¶ 21    Plaintiff also raises a procedural due process claim. She claims that through past practices and direct communication allowing the credits, the Attorney General effectively adopted a rule allowing a prior transfer credit against the Illinois estate tax. She contends that the Attorney General's abrupt change from that rule without adequate notice violates due process.

¶ 22    An administrative agency cannot extend or restrict a statute's operation through its rules or regulations by adopting a rule that conflicts with its governing statute. *Hadley v. Illinois Department of Corrections*, 224 Ill. 2d 365, 385 (2007); *Montgomery Ward Life Insurance Co. v. Department of Local Government Affairs*, 89 Ill. App. 3d 292, 302 (1980). Moreover, an agency's erroneous interpretation of a law does not preclude courts from properly enforcing the terms of the statute. *Village of Westmont v. Illinois Municipal Retirement Fund*, 2015 IL App (2d) 141070, ¶ 25; see also *City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268*, 122 Ill. 2d 353, 361 (1988) (an administrative agency's interpretation is not binding and will be rejected when it is erroneous). Thus, although agencies may be required under some circumstances to follow their prior regulations, they cannot be bound to follow a regulation that is invalid under their enabling statutes. *Department of Revenue v. Civil Service Comm'n*, 357 Ill. App. 3d 352, 364-67 (2005). Accordingly, courts have refused to require the State to follow prior regulations published in the agency's tax bulletin that allowed a tax deduction where the policy conflicted with the governing tax statute. See *Citizens State Bank of Mount Morris v. Johnson*, 130 Ill. App. 3d 925, 930-32 (1985); *Montgomery Ward*, 89 Ill. App. 3d at 301-03 (reviewing court declined to require the State to apply a tax exemption approved under prior policy).

¶ 23    In this case, the policy plaintiff is attempting to enforce conflicts with the agency's enabling statutes. See 35 ILCS 405/2(b), 3 (West 2016); 26 U.S.C. § 2011 (2000). Consequently, even if the Attorney General had issued a regulation to allow a prior transfer credit, the Estate Tax Act would preclude the application of a prior transfer credit against the Illinois estate tax. See *Hadley*, 224 Ill. 2d at 385. Therefore, the Attorney General is not bound, under any prior regulation or policy, to allow a prior transfer credit on the estate's state tax return. See *Department of Revenue*, 357 Ill. App. 3d at 364-67; *Montgomery Ward*, 89 Ill. App. 3d at 302-03.

¶ 24    On appeal, plaintiff extends its due process argument to include estoppel. When invoked against a governmental entity exercising its governmental functions, estoppel will only apply in compelling or extraordinary circumstances. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 35. Courts will apply equitable estoppel against a public body only if the aggrieved party can show that (1) the government entity affirmatively acted, (2) the affirmative act induced substantial reliance, and (3) the aggrieved party substantially changed its position as a result of its justifiable reliance. *Morgan Place of Chicago v. City of Chicago*, 2012 IL App (1st) 091240, ¶ 33.

¶ 25    Plaintiff's allegations fail to make a *prima facie* case for estoppel. See *In re Marriage of DiFiglio*, 2016 IL App (3d) 160037, ¶ 14 (to overcome a motion to dismiss, plaintiff must make a *prima facie* showing that a cause of action exists). The estate claims that the Attorney General induced its reliance on the availability of credits for taxes paid on prior transfers. However, plaintiff does not describe how it *substantially* relied on the Attorney General's practice of allowing the use of prior transfer credits. When the estate filed its state estate tax return, it was obligated to pay state and federal estate taxes regardless of any prior transfer credit. It was possible that a prior transfer credit would reduce the amount of estate tax it owed, but that credit did not affect the value of Sharon's estate. Moreover, the estate fails to allege to what detriment it relied on the potential use of prior transfer credits. Plaintiff does not claim that Sharon relied on prior transfer credits for estate planning purposes or that the estate changed its position based on any prior transfer credit the Attorney General permitted her to use on a previous tax form. Plaintiff failed to assert any affirmative act that induced Sharon to substantially change her position as a result of justifiable reliance.

¶ 26    At Sharon's death, the estate filed and paid estate taxes, and the Attorney General denied use of the prior transfer credit for purposes of calculating the amount of Illinois estate tax owed. Whether that denial was proper is an appropriate question to be raised under the Protest Monies Act, but these facts do not support a claim of estoppel.

¶ 27                              C. Uniformity Clause

¶ 28    Last, plaintiff claims that the Attorney General's denial of the prior transfer credit violates the uniformity clause.

¶ 29    The uniformity clause provides that "[i]n any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable \*\*\*. Exemptions, deductions, credits, refunds and other allowances shall be reasonable." Ill. Const. 1970, art. IX, § 2. The clause requires that a statute's tax classification "must be based on a real and substantial difference between the persons taxed and those not taxed," and the classification "must bear some reasonable relationship to the object of the legislation or to public policy." *Sun Life Assurance Co. of Canada v. Manna*, 227 Ill. 2d 128, 136-37 (2007). As this standard reflects, "[t]he gravamen of a uniformity clause challenge is a classification." *Caveney*, 207 Ill. 2d at 96 (finding no viable uniformity clause challenge where statute was "perfectly uniform" and offered same tax credit to all taxpayers).

¶ 30    Here, the Estate Tax Act imposes the full estate tax without providing a prior transfer credit to any estate. See *id.* The act assesses the same tax on all the estates containing Illinois property; it assesses the full state tax credit calculable under section 2011 of the Code as of December 31, 2001. See 35 ILCS 405/2(b), 3(b) (West 2016). All estates, in turn, are subject to a tax defined by the former federal state tax credit and the federal taxable estate. See *id.* § 2(b); 26 U.S.C. § 2011 (2000). Since the Code does not calculate the state tax credit using the prior transfer credit, the Act does not allow the prior transfer credit against the Illinois tax for any estate. Accordingly, the tax is uniform to all estates. See *Caveney*, 207 Ill. 2d at 96.

¶ 31    Because the estate failed to challenge any tax classification within the Estate Tax Act, the uniformity clause does not require the Attorney General to demonstrate that any such classification is based on a real and substantial difference or that it bears a reasonable relationship to the Act's purpose. Therefore, the trial court did not err in dismissing the estate's claim on this basis. See *Sun Life*, 227 Ill. 2d at 137-38 (retaliatory tax on alien corporations

that treated all non-Illinois insurance companies the same was not prohibited by the uniformity clause).

¶ 32                                III. CONCLUSION

¶ 33          The judgment of the circuit court of Tazewell County is affirmed.

¶ 34          Affirmed.